**Eva DOUCETTE, et al., Plaintiffs,**

v.

**H. Rollin IVES, et al., Defendants (Two Cases).**

**Civ. Nos. 88–0263–P, 88–0233–B.**

United States District Court, D. Maine.

July 31, 1990.

James R. Crotteau, Pine Tree Legal Assistance, Inc., Machias, Me., Roberta Ouellette, Pine Tree Legal Assistance, Inc., Portland, Me., for plaintiffs.

Christopher C. Leighton, Asst. Atty. Gen., Augusta, Me., for defendant Ives.

Joyce Elise McCourt, Asst. Regional Counsel, Dept. of HHS, Office of General Counsel, Boston, Mass., David R. Collins, Asst. U.S. Atty., Portland, Me., for defendant Bowen.

## MEMORANDUM OF DECISION AND ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON STIPULATED FACTS

GENE CARTER, Chief Judge.

This class action is before the Court on cross motions for judgment on the pleadings. Plaintiffs brought suit on September 6, 1988, seeking injunctive relief against the Maine Department of Human Services (DHS) and the Secretary of the United States Department of Health and Human Services (Secretary). Plaintiffs argue that the Secretary's regulation, found at 45 C.F.R. § 232.21, improperly prohibits DHS from making supplemental payments to Plaintiffs, pursuant to the Aid to Families with Dependent Children program (AFDC), from child support payments Plaintiffs have assigned to DHS and that DHS has collected through federal tax refund offsets. Because the Court finds that the Secretary's regulation violates 42 U.S.C. § 602(a)(28), the Court will grant Plaintiffs' motion and deny Defendants' motion.

### Background

AFDC is a cooperative federal-state program administered by states. It was established to "encourag[e] the care of dependent children ... to help maintain and strengthen family life ... and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence...." 42 U.S.C. § 601. These goals are accomplished "by enabling each State to furnish financial as-

sistance and rehabilitation and other services." *Id.*

States determine the amount of a family's AFDC benefits by subtracting the family's countable income from a state established "standard of need," the amount of money a state determines is necessary for the subsistence of a family of a given size. Most states provide funds equal to the difference between the established standard of need and the family's countable income so that every family has enough funds to meet the standard of need. *Quarles v. St. Clair*, 711 F.2d 691, 694 (5th Cir.1983). DHS, however, has established a maximum payment standard that limits the amount of AFDC funds available for any particular family, thus leaving some families with a gap between the AFDC funds available and the amount of money necessary to elevate the family to the standard of need.

The calculation of "countable income" is essential to determining the amount of AFDC benefits to which a family is entitled. Prior to 1975, families could include child support payments to which they were entitled as income. 121 Cong.Rec. H23696 (daily ed. July 21, 1975).[1] Thus, such funds were available to help reduce the gap between the funds available to a family and the standard of need. Since 1975, however, child support payments are no longer included in the determination of the families' countable income, and instead, families who receive AFDC funds must assign the right to receive such child support payments to the state. 42 U.S.C. § 602(a)(26). The state may retain the child support payments collected that are in excess of the child support obligations due in the current month. 42 U.S.C. § 657(b).

Before section 602(a)(26) went into effect, Congress realized that state retention of child support payments would cause many families living in "gap" states to lose income necessary for them to meet the

---

1. As noted in *Quarles v. St. Clair*, 711 F.2d 691, 694 (5th Cir.1983),

Before 1975, monthly "countable income" included child support payments the AFDC parent received each month from the divorced or otherwise absent parent.... If this

"countable income"—earnings plus child support—exceeded the "standard of need," the AFDC parent would be ineligible for assistance in that month. *Id.*

standard of need. *See, e.g.,* 121 Cong.Rec. S26754 (daily ed. Aug. 1, 1975); 121 Cong. Rec. H23696 (daily ed. July 21, 1975). In order to remediate this specific problem, Congress provided that any money retained by the state shall be added to the families' AFDC payments, provided that the monies would not raise a family's income beyond the standard of need.[2] 42 U.S.C. § 602(a)(28); H.R.Rep. 94–368, Child Support Program Improvements, House Ways and Means Committee, 94th Cong., 1st Sess. 5 (July 17, 1975). Thus, pursuant to section 602(a)(28), families residing in gap states, as do Plaintiffs, would receive the child support payments that they had assigned to the state in order to fill the gap created between their funds and the standard of need.[3]

2. The statute reads as follows:
> (a) **Contents.** A State plan for aid and services to needy families with children must—
> (28) provide that, in determining the amount of aid to which an eligible family is entitled, any portion of the amounts collected in any particular month as child support pursuant to a plan approved under part D [42 USCS §§ 651 *et seq.*], and retained by the State under section 457 [42 USCS § 657], which (under the State plan approved under this part [42 USCS §§ 601, *et seq.*] as in effect both during July 1975 and during that particular month) would not have caused a reduction in the amount of aid paid to the family if such amounts had been paid directly to the family, shall be added to the amount of aid otherwise payable to such family under the State plan approved under this part [42 USCS §§ 601 *et seq.*].

42 U.S.C. § 602(a)(28).

3. Actually, Plaintiffs would receive funds one dollar short of the standard of need to preserve Plaintiffs' eligibility.

4. The statute reads as follows:
> **Collection of past-due support from Federal tax refunds**
> (a) **Procedures applicable; distribution.** (1) Upon receiving notice from a State agency administering a plan approved under this part [42 USCS §§ 651 *et seq.*] that a named individual owes past-due support which has been assigned to such State pursuant to section 402(a)(26) or section 471(a)(17) [42 USCS §§ 602(a)(26), 671(a)(17)], the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such individual (regardless of whether such individual filed a tax return as a married or unmarried individual). If the Secretary of the Treasury finds that any such

In order to help states effectively collect child support payments, Congress provided various methods of collection within Part D of title IV of the Social Security Act (IV–D). 42 U.S.C. § 651, *et seq.* For example, the IV–D program permits states to utilize the services of the Internal Revenue Service (IRS). 42 U.S.C. §§ 664(a), 652(b). The particular collection scheme at issue in this suit involves the IRS retention of federal tax refunds due parents owing child support payments.[4] 42 U.S.C. § 664(a). The Secretary passed a regulation stating that the statutory provision, 42 U.S.C. § 602(a)(28), that allows funds up to the standard of need level to be returned to families in gap states was inapplicable to monies collected by the tax refund offset method. 45 C.F.R. § 232.21.[5]

> amount is payable, he shall withhold from such refunds an amount equal to the past-due support, shall concurrently send notice to such individual that the withholding has been made (including in or with such notice a notification to any other person who may have filed a joint return with such individual of the steps to which such other person may take in order to secure his or her proper share of the refund), and shall pay such amount to the State agency (together with notice of the individual's home address) for distribution in accordance with section 457(b)(4) or (d)(3) [42 USCS § 657(b)(4) or (d)(3)].

42 U.S.C. § 664(a).

5. The regulation, in its pertinent parts, reads as follows:
> (a) The purpose of this section is to provide for the computation of a supplemental payment under section 402(a)(28) of the Social Security Act. When used in this section—
> "Countable income" means the amount of the recipient's gross income that is used in the computation of the assistance payment after application of all disregards, including work-related expenses.
> "Countable support payment" means the support collected on the current month's support obligation less an amount not in excess of the first $50 collected on that obligation. It also means the excess payments paid to the recipient by the IV–D agency under 45 CFR 302.51(b)(3) and (5).
> "Disposable income" means the sum of the assistance payment, and the countable income used in determining the amount of the payment.
> "Arrearages" means all collection of past due support *exclusive of those made through the Federal and State income tax refund offset.*
> . . . .

45 C.F.R. § 232.21 (emphasis added).

Plaintiffs are members of a class of AFDC recipients who do not receive enough AFDC benefits to raise their income to the standard of need level and who have assigned to DHS, pursuant to 42 U.S.C. § 602(a)(26), child support payments that they are entitled to receive.[6] In accordance with the Secretary's regulation, DHS has refused to apply child support payments collected pursuant to section 664(a) to fill Plaintiffs' gap in AFDC funds. Thus, it is this regulation that Plaintiffs argue violates the provisions of 42 U.S.C. § 602(a)(28).

## Discussion

■ Courts must begin their review of an agency's statutory interpretation by determining whether the "intent of Congress is clear." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If Congress's intent is clear, then the regulation must be fully consistent with the statutory meaning. *Id.* at 842–43, n. 9, 104 S.Ct. at 2781–82 n. 9; *National Labor Relations Board v. United Food & Commercial Workers Union, Local 23*, 484 U.S. 112, 123, 108 S.Ct. 413, 420, 98 L.Ed.2d 429 (1987). If the intent of Congress is *not* clear, courts must defer to the agency's interpretation of the statute, provided that it is based on a permissible construction and is rational. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781–82; *National Labor Relations Board*, 484 U.S. at 123, 108 S.Ct. at 420.

■ To apply the first step of analysis, the Court must employ its traditional tools of statutory construction to ascertain Congress's clear intention, if such a clear intention exists. *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9. The starting point

in any interpretation of a statute is with the plain meaning of the provision itself. *Board of Governors of Federal Reserve System v. Dimension Financial Corporation*, 474 U.S. 361, 368, 373, 106 S.Ct. 681, 685, 688, 88 L.Ed.2d 691 (1986). A court must, however, analyze "the language and design of the statute as a whole." *K Mart Corporation v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). The Court must also analyze the history of the provision and the overall purpose of the statute to discern if Congress's intent was clear. *Wilcox v. Ives*, 864 F.2d 915, 924 (1st Cir.1988).

■ The Secretary first argues that the plain language of 42 U.S.C. § 602(a)(28) indicates that the provision does not apply to tax refund offsets. The Secretary argues that Congress intended this provision to prevent a reduction in income by recipients in gap states, and that therefore, the statute only applies to income that the family could have obtained on its own. Because, the Secretary argues, child support obtained by tax refund offsets would be otherwise unavailable to families, these funds are not income that a family could have had. Therefore, the Secretary argues that such funds are outside the scope of section 602(a)(28).

The Secretary's reading and interpretation of the statute is contrary to the plain meaning and legislative history of the statute. Pursuant to section 664(a), the state need not use any other method of collection before using the refund offset method. *Coughlin v. Regan*, 584 F.Supp. 697, 703–04 (D.Me.1984). Because states can choose to use the tax refund procedure as their first collection tool, it is impossible to know if the state could have collected the funds by other means. Thus, it cannot be true

---

**6.** Pursuant to Local Rule 19(c) and Rule 23 of the Federal Rules of Civil Procedure, the Court will grant Plaintiffs' motion for class certification. The class is described as follows:
All families in the State of Maine
(a) whose right to receive child support from an absent parent in any month since November 1985, has been or will be assigned to DHS as a condition for their receipt of AFDC benefits;

(b) on whose behalf DHS has received or will receive federal tax refund offsets under 42 U.S.C. § 664(a) as a result of such assignment; and
(c) to whom DHS has failed or will fail to pass through a gap payment to which the AFDC family would be entitled pursuant to 42 U.S.C. § 602(a)(28).

that funds collected by a tax refund are necessarily, or even probably, funds that a family could not have obtained on its own. In addition, contrary to the legislative intent behind the IV–D program, the Secretary's regulation provides incentive to states to delay collecting child support payments so that they may use the tax refund collection technique and thus retain the payments. Congress enacted section 602(a)(26) and IV–D to provide an incentive to the states to aid in the collection of delinquent child support obligations. *Quarles v. St. Clair,* 711 F.2d 691, 695 (5th Cir.1983). Congress hoped that states could do a better job than parents of collecting these funds.

The Secretary's regulation frustrates this purpose. States will desire to collect child support payments solely from tax refunds because this method is singled out as the only collection technique by which states need not reimburse families in accordance with section 602(a)(28). The tax refund offset, however, necessarily requires that the support payments be delinquent before it may be utilized. Thus, the Secretary's regulation provides an incentive for states to allow the child support payments to become delinquent before collecting through the tax refund technique. Furthermore, the Secretary's regulation provides an incentive for states to use *only* the tax refund collection technique. Therefore, the regulation runs contrary to the legislative intent of Congress's enforcement scheme.

The regulation also results in inconsistencies within the IV–D program. As noted above, under the regulation, it is only when states collect child support payments by the tax refund technique that states do not have to remit such payments to families pursuant to section 602(a)(28). States must, however, remit funds obtained by other available collection tools, such as direct IRS collection pursuant to 42 U.S.C. § 652(b). Child support payments collected by direct IRS collection would also result, hypothetically, in the collection of funds that would not otherwise be accessible to the parent. The Court can find no valid reason in the AFDC enforcement provi-

sions for distinguishing between these collection techniques.

The most persuasive argument against the Secretary's interpretation, however, is the language of section 602(a)(28) itself. The statute's language simply does not require that the family actually have been able to collect the child support income that the state retained. The Secretary notes that the statute refers to child support payments that are collected and which "would not have caused a reduction in the amount of aid paid to the family *if* such amounts had been paid directly to the family." 42 U.S.C. § 602(a)(28) (emphasis added). This language does not support the Secretary's interpretation that the family must have been able to collect the payments by themselves. As noted above, the purpose for requiring families to assign their rights to child support payments in the first place was to increase the likelihood that such payments would be collected. It makes little sense to argue that the achievement of that statutory end should result in a reduction of benefits. In fact, it was to avoid that very result that Congress passed section 602(a)(28). *See, e.g.,* 121 Cong.Rec. H23696, 23697 (daily ed. July 21, 1975).

Both the Secretary and DHS argue that the Secretary's regulation is in accord with the specific language in section 664(a) which they maintain controls the "general" language in section 602(a)(28). DHS, in particular, argues that where there is a statutory conflict, the specific statute takes precedence over the more general statute. The Court, finding no conflict between the two statutes, disagrees with Defendants' views.

Section 602(a)(28) applies to "any portion of the amounts collected in any particular month as child support . . . and retained by the State under section 457 [42 U.S.C. § 657] . . . ." 42 U.S.C. 602(a)(28). Despite this clear language, the Defendants maintain that section 602(a)(28) is inapplicable in this action because section 664(a) requires that the monies shall be retained by the state specifically pursuant to section 657(b)(4) and not generally pursuant to sec-

tion 657(b).[7] DHS argues that the specific provision of section 664(a) controls the general provision of section 602(a)(28). The Secretary maintains that it is crucial that section 664(a) did not provide explicitly for the channeling off of funds pursuant to section 602(a)(28).

Section 657(b) sets out various alternatives under which a state may either retain funds or reimburse families. 42 U.S.C. § 657(b). Only section 657(b)(4) concerns child support payments collected in excess of the parent's monthly obligation. *Id.* Section 657(b)(4) permits states to retain all such delinquent or excess payments to the extent reimbursement is owed to the state. *Id.* In *Quarles v. St. Clair*, 711 F.2d 691, 699 (5th Cir.1983), the Court of Appeals for the Fifth Circuit held that although section 657(b)(3) permitted states to retain delinquent payments, section 602(a)(28) modified section 657(b)(3) so that such payments must first be disbursed to families in gap states to the extent such disbursements would not affect the families' AFDC eligibility.[8] The *Quarles* court made clear that section 602(a)(28) controlled the language in section 657(b). In particular, the court noted that the broad language in section 602(a)(28) meant what it said; it "require[s] the states to disburse to the AFDC family *any collected* child support obligations...." *Quarles*, 711 F.2d at 699 (emphasis in original).

Both Defendants ascribe much importance to the fact that section 664(a) states that monies collected by tax refund shall be distributed pursuant to section 657(b)(4) and does not refer to section 657(b) in general. First, the referral to section 657(b)(4) does not mean that the state may categorically retain the funds collected. As the *Quarles* court found, monies retained under the same language of section 657(b)(4) must first be disbursed to AFDC families to bring them up to the standard of need.

*Quarles*, 711 F.2d at 699. In addition, under the alternatives of section 657(b)(1)–(b)(4), only (b)(4) applies to delinquent payments. Because child support payments collected by tax refunds are necessarily delinquent payments, it can be no surprise that section 664(a) specifically points to the one subsection of section 657(b) that could apply to refund offsets.

Second, the language of section 602(a)(28) is as broad as it is clear. It applies to "any portion of the amounts collected ... and retained by the State under section 457 [42 U.S.C. § 657]." Because section 664(a) refers to a part of section 657, the rule in section 602(a)(28) applies. The Court can find nothing in the legislative history or the language of these provisions that indicates that Congress intended to carve an exception into the applicability of section 602(a)(28). Indeed, the fact that the legislative intent to ameliorate the harsh effects that the assignment of child support payments would have on parents living in gap states would be frustrated by the Secretary's interpretation, clearly supports the view that section 602(a)(28) applies to all of section 657(b).

In sum, the Secretary's regulation, 45 C.F.R. § 232.21, is contrary to the plain meaning and legislative history of 42 U.S.C. § 602(a)(28) and the IV–D program. Where the intent of Congress is clear, a regulation must be fully consistent with the statutory meaning. *Chevron U.S.A., Inc.*, 467 U.S. at 842–43, n. 9, 104 S.Ct. at 2781–82 n. 9; *National Labor Relations Board*, 484 U.S. at 123, 108 S.Ct. at 420.

## ORDER

Accordingly, it is *ORDERED* that:

(1). Plaintiffs' Motion for Judgment on Stipulated Facts be, and it is hereby, *GRANTED.*

---

**7.** Although section 664(a) also references section 657(d)(3), Defendants direct their arguments solely to section 657(b), noting that section 657(d)(3), concerning foster parents, is essentially equivalent to section 657(b)(4). Because the two sections are similar, the Court will limit its discussion to section 657(b).

**8.** Although the *Quarles* court dealt with section 657(b)(3), that section is now codified as section 657(b)(4).

(2). Defendants' Motion for Judgment on Stipulated Facts be, and it is hereby, *DENIED.*

(3). Plaintiffs' Motion for Class Certification be, and it is hereby, *GRANTED*, the Plaintiff class being defined as follows:

All families in the State of Maine

(a) whose right to receive child support from an absent parent in any month since November 1985, has been or will be assigned to DHS as a condition for their receipt of AFDC benefits;

(b) on whose behalf DHS has received or will receive federal tax refund offsets under 42 U.S.C. § 664(a) as a result of such assignment; and

(c) to whom DHS has failed or will fail to pass through a gap payment to which the AFDC family would be entitled pursuant to 42 U.S.C. § 602(a)(28).

(4). Plaintiffs' requests for further injunctive relief are hereby *DENIED* without prejudice to reassertion in the event of noncompliance by Defendants with this Judgment and Order, the Court retaining jurisdiction of this matter for purposes of future enforcement.

The Court DECLARES that 45 C.F.R. § 232.21(a) and any Maine regulations promulgated solely to comply with 45 C.F.R. § 232.21(a) are INVALID to the extent that they do not permit federal tax refunds to pass through to AFDC families in accordance with 42 U.S.C. § 602(a)(28).

Finally it is ORDERED that within 15 days of the date of this order, the parties agree on a form of notice to be sent to members of the class, providing them with information about the outcome of this action.