**CRABSHAW MUSIC, et al.**

v.

**K–BOB'S OF EL PASO, INC. and Larry Hahn.**

**No. EP–86–CA–227.**

United States District Court, W.D. Texas, El Paso Division.

Aug. 8, 1990.

Mark N. Osborn, Kemp, Smith, Duncan & Hammond, El Paso, Tex., Jack C. Goldstein, Arnold, White & Durkee, Houston, Tex., John B. Nelson, Jackson & Walker, Dallas, Tex., Floyd R. Nation, Arnold White & Durkee, Austin, Tex., for plaintiffs.

Walter L. Boyaki, Miranda & Boyaki, El Paso, Tex., for defendants.

## AMENDED ORDER ON MOTION FOR SUMMARY JUDGMENT

BUNTON, Chief Judge.

BEFORE THIS COURT is the Motion of the Plaintiffs for Summary Judgment in the above-numbered cause. Having considered the Motion, the Defendants' Response thereto and the Plaintiffs' Reply, this Court is of the opinion the Motion is meritorious and should be granted.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.

Thus, the focus of this Court is upon disputes over material facts; facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 107 (1987), and the cases cited therein.

The Supreme Court's 1986 trilogy of summary judgment cases clarified the test for granting summary judgment. In *Anderson v. Liberty Lobby*, the Court stated the trial court must consider the substantive burden of proof imposed on the party making the claim. In the case before this Court, the Plaintiffs have the burden with respect to their claims; Defendants have the burden with respect to certain defenses they raise. The Court in *Anderson v. Liberty Lobby* defined "material" as involving a "dispute over facts which may affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby* requires this Court to substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine."

In a second case, the Supreme Court reiterated that where the party moving for summary judgment has established *prima facie* that there is no genuine issue as to any material fact, the non-moving party must then come forward with "specific facts" showing a genuine issue for trial. It must be "more than simply ... that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A third case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) held where the moving party shows the opposing party is unable to produce evidence in support of its case, summary judgment is appropriate. In *Celotex Corp.*, it was not necessary for the motion for summary judgment to be supported by affidavits or other material specifically negating the non-moving party's claim so long as the District Court was satisfied there was an absence of evidence to support it. At that point the burden shifted to the non-moving party to produce

evidence in support of its claims; if it did not produce any, summary judgment was required.

This Court has demonstrated its willingness to allow non-moving parties their day in court in borderline cases where under governing law or reasonable extensions of existing law, the hearing of some testimony would be helpful to understand the proper application of the law. Such is not the case in the suit *sub judice*, however. The Court finds there are no fact issues warranting submission of the case to a jury. Accordingly, the Court shall grant the Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

This suit comes to this Court by way of Federal Question jurisdiction, namely whether the Defendants violated Federal copyright laws by intentionally playing copyrighted music in their restaurants without licensing. Defendants own and operate three "K–Bob's Steakhouse" restaurants in El Paso, Texas, including the K–Bob's on Viscount Street. Plaintiffs contend the Defendants played music for the public over large loudspeaker systems in violation of the copyrights asserted by Plaintiffs. Plaintiffs are members of the American Society of Composers, Authors and Publishers ("ASCAP"), an association formed by music composers. ASCAP operates as a 'clearing-house' for copyright owners and users to ameliorate common problems associated with the licensing of music. *Broadcast Music, Inc. v. CBS,* 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1978). ASCAP retains the nonexclusive right to license nondramatic performances of its members' works and distributes royalties to members. Typically, licensing is effected via a blanket system, i.e. ASCAP grants the licensee a license to play any piece of music in its repertoire for a set fee. AS-CAP also takes responsibility for policing public establishments known to offer public performances of ASCAP members' copyrights.

Such is the backdrop for this action. AS-CAP contacted K–Bob's El Paso on numerous occasions between 1983 and July 27, 1985 [1] seeking to license K–Bob's for the use of its members' music. Each time the offer was denied or ignored. Employees of ASCAP then visited the premises of K–Bob's on Viscount and recorded performances played over the loudspeaker system without a license. Plaintiffs now contend damages are due them for the unlicensed performance of copyrighted material.

Defendants deny the loudspeaker system was used as a means of playing music, although the manager of the three El Paso restaurants, Willi Holst, testified in deposition the radio could have been played over the loudspeakers where customers could hear it. Defendants also deny the system, even if so utilized, was of a scale large enough to come within the purview of the statute. 17 U.S.C. §§ 101, *et seq.*

## DISCUSSION

As Plaintiffs correctly point out, the elements required of a copyright infringement case include: "(1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright under Title 17, United States Code; (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) defendants' public performance of the compositions; and (5) defendants' failure to obtain permission from the plaintiffs or their representatives for such performance." *Almo Music Corp. v. 77 East Adams, Inc.,* 647 F.Supp. 123 (N.D.Ill. 1986). Plaintiffs tendered photocopies of the copyright registration certificates for the songs in question. Defendants do not dispute the first three elements of Plaintiffs' copyright suit. Additionally, Defendants do not tender proof permission was obtained to perform copyrighted music over the speaker system at K–Bob's.

---

1. July 27, 1985 is the date employees of ASCAP patronized K–Bob's and listed the songs audible from the speaker system in the restaurant. Six of those performances were ASCAP member copyrights. The six copyright holders filed suit on July 7, 1986.

Instead, Defendants merely state they do not admit to the allegation music was played over the speaker system. No affidavits in support of this cursory denial were tendered to the Court. Plaintiffs, on the other hand, filed the affidavits of Loy Wells and Trudy Wells, the previously identified employees of ASCAP, stating they patronized K–Bob's on July 27, 1985 and heard radio music over the speaker system while seated in one of the dining areas. Both Loy and Trudy Wells made a list of the numbers played while they were present, which lists included a total of six songs copyrighted by ASCAP members. Additionally, Mr. Holst testified at deposition he knew the employees of the Viscount location were prone to turn on the stereo system (which was hooked up to the speaker system) and he could not deny the stereo was left on and played over the speakers during business hours. Thus, this Court is of the opinion Plaintiffs present a prima facie case of copyright infringement to this Court pursuant to Title 17 of the United States Code.

By way of affirmative defenses, Defendants, in their Opposition to Plaintiffs' Motion for Summary Judgment, raise the following: (1) whether playing the radio over a non-entertainment sound system constitutes copyright infringement; (2) whether Defendant Larry Hahn, as absentee owner of K–Bob's, may be found liable for copyright infringement; (3) the appropriate measure of damages; and (4) the reasonableness of the attorney's fees claimed by Plaintiffs' counsel. Each shall be discussed seriatim.

## SIZE AND PURPOSE OF THE SOUND SYSTEM

■ In their initial attack upon Plaintiffs' case, Defendants rely upon the U.S. Supreme Court case *Twentieth Century Corp. v. Aiken*, 422 U.S. 151, 95 S.Ct. 2040, 45 L.Ed.2d 84 (1975) which stands for the proposition a radio broadcast played by a small fast food shop was not a "performance" under 17 U.S.C. § 1(e) and therefore not an infringement of the performers' copyrights. Soon after the *Aiken* decision came down, however, Congress amended

Title 17, thereby specifying the intended exceptions to Title 17, eliminating any necessity of proving the performance was made for profit, and directly rejected the *Aiken* rationale. Specifically, the exception pertinent to these facts is found in § 110(5) which states:

> Notwithstanding the provisions of section 106, the following are not infringements of copyright:
>
> (5) communication of a transmission embodying a performance or display of a work by the public reception of the transmission on a single receiving apparatus of a kind commonly used in private homes, unless—
>
> (A) a direct charge is made to see or hear the transmission; or
>
> (B) the transmission thus received is further transmitted to the public....

17 U.S.C. § 110(5).

Similarly, the legislative history outlines the following revealing monograph:

> It is the intent of the conferees that a small commercial establishment of the type involved in *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 [95 S.Ct. 2040, 45 L.Ed.2d 84] (1975), which merely augmented a home-type receiver and which was not of sufficient size to justify, as a practical matter, a subscription to a commercial background music service, would be exempt. However, where the public communication was by means of something other than a home-type receiver apparatus, or where the establishment actually makes a further transmission to the public, the exemption would not apply.

H.R.Conf.Rep. No. 1733, 94th Cong., 2d Sess. 75, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5810, 5816.

The apparatus involved in *Aiken* was described by the Court as "a radio with outlets to four speakers in the ceiling." The House Committee had earlier considered this fact situation

> to represent the outer limit of the exemption, and believe[d] that the line should be drawn at that point. Thus the clause would exempt small commercial estab-

lishments whose proprietors merely bring onto their premises standard radio or television equipment and turn it on for their customers' enjoyment, but it would impose liability where the proprietor has a commercial "sound system" installed or converts a standard home receiving apparatus (by augmenting it with sophisticated or extensive amplification equipment) into the equivalent of a commercial sound system. Factors to consider in particular cases would include the size, physical arrangement, and noise level of the areas within the establishment where the transmissions are made audible or visible, and the extent to which the receiving apparatus is altered or augmented for the purpose of improving the aural or visual quality of the performance for individual members of the public using those areas.

H.R.Rep. 1476, 94th Cong., 2d Sess. 87, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5701.

The particular apparatus involved in the above-numbered suit is based upon a public address system with a stereo wired into it and eleven speakers installed throughout the restaurant. Deposition testimony of Thomas Howell of Howell Electronics, the servicer for K–Bob's electronic equipment, reveals K–Bob's requested Howell Electronics to service the tuner because of the low volume and distorted music on the speaker system. Howell testified the tuner was of a commercial type, the speakers were designed for dissemination of sound in a commercial building, the microphones were of commercial quality or type.

The restaurant itself is of no small proportion, boasting some 7000 square feet of dining area and grossing between $800,-000.00 and $900,000.00 in revenues annually. Also, the fact the patrons could not always hear the music, or could only hear it in certain sections of the restaurant is not dispositive as it is the general atmosphere to which such music contributes which benefits therefrom. *See, e.g.: Herbert v.*

*Shanley,* 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511 (1917). Thus, this Court does not hesitate to find the facts above do not fit within the exception carved out under 17 U.S.C. § 110(5).

## LIABILITY OF ABSENTEE OWNER

■ Defendants next argue Defendant Larry Hahn should not shoulder the liability for any wrongdoing of his restaurant. The facts indicate Hahn is one of two owners of K–Bob's and has a business address in El Paso, Texas.[2] Hahn spends some 50% of his time at his home address in San Diego, California. Although Hahn was unable to recall precisely, he believes he is the nominal vice-president of K–Bob's, although he considers himself an absentee owner. Several of the letters sent by AS-CAP requesting K–Bob's to acquire licensing went to the El Paso offices of Mr. Hahn, although he denied having seen them. Hahn, together with his partner Mr. Poulsen, hired the manager of the Viscount K–Bob's, Mr. Willi Horst. Although the individual managers of each of the restaurants had the authority to hire and fire employees, Hahn, as owner, retained the ultimate decision-making authority for the restaurant. Profits derived from the business were reinvested therein for expansion purposes. Mr. Hahn further testified he and Mr. Poulsen did not authorize music to be played in the restaurant.

Courts have traditionally held the "corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." *Sailor Music v. Mai Kai of Concord, Inc.,* 640 F.Supp. 629 (D.N.H. (1986); *Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, Inc.,* 423 F.Supp. 341 (D.Mass.1976), *aff'd,* 554 F.2d 1213 (1st Cir.1977); *Warner Bros.–Seven Arts, Inc. v. Kalantzakis,* 326 F.Supp. 80 (S.D.Tex. 1971). Additionally, "one may be held vi-

---

**2.** Hahn operates under the corporate name of Hahn Enterprises, Inc., which is headquartered in El Paso, Texas.

cariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Boz Skaggs Music v. KND Corp.*, 491 F.Supp. 908, 913 (D.Conn. 1980) [*quoting: Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1161–2 (2nd Cir.1971)]. Such is the case at bar. Although Mr. Hahn may not have asserted his authority directly over the day to day affairs of K–Bob's, he did indeed retain the right and ability to supervise the restaurant, including the playing of music on the speakers, and he did and does have a direct financial interest in the financial success of the restaurant. Moreover, even if Hahn did not actually view the ASCAP letters sent to his office, such letters were mailed to his business address putting him on notice of the matter. Further, his manager Willi Horst was aware of ASCAP's grievances and therefore this Court shall not absolve Hahn on notice grounds. For these reasons, this Court is of the opinion Hahn is legally liable, jointly and severally, for the infringing activity which took place at his restaurant.

## MEASURE OF DAMAGES

■ This Court, under 17 U.S.C. § 502(a), has the discretion to enjoin Defendants from further broadcasting radio performances from their personal address system. As Plaintiffs point out, although Defendants may have disconnected the radio from the system for the present, there is no guarantee the radio will not be hooked up again at a later date. Further, the purpose behind ASCAP is to protect those in the music industry from losing all incentive to create when the free performance of successful songs to large groups of people is as easy as turning on a radio or stereo. Thus, this Court finds the equities favor the imposition of injunction against the Defendants. Such injunction shall operate to enjoin the unlicensed performances of radio tunes over the loudspeaker system. Should K–Bob's elect to buy an ASCAP (or BMI) license in the future, this Court's injunction shall be eliminated.

In addition, this Court is of the opinion statutory damages are applicable. Section 504 of Title 17 provides:

(c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum not less than $250 or more than $10,000 as the court considers just.

17 U.S.C. § 504(c)(1). Thus, this Court could find a statutory damage remedy in the range of $1500.00 to $60,000.00, for all of the six infringements found this day. Plaintiffs request $1,500.00 per infringement for a total damage remedy of $9,000.00. This Court is inclined to grant the request for several reasons. First, had Defendants chosen to play the music under license, they would have paid approximately $2,175.00 in licensing fees for the relevant period of June 1, 1983 to June 30, 1986. Any statutory remedy below that figure would reward Defendants for their infringement. *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D. Va.1985); *Rodgers v. Eighty–Four Lumber Co.*, 623 F.Supp. 887 (W.D.Pa.1985). In addition, Defendants were well aware playing the radio over the speakers was a potential infringement of ASCAP members' copyright as they received numerous communications, both written and oral from ASCAP on the subject.

## REASONABLENESS OF ATTORNEY'S FEES

Title 17 allows the discretionary award of attorney's fees to the prevailing party in copyright infringement cases. 17 U.S.C. § 505. As cited by Plaintiffs, the Fifth Circuit noted the award of attorney's fees in copyright infringement cases is the rule rather than the exception. *Micromanipulator Co., Inc. v. Bough*, 228 U.S.P.Q. 443, 446 (5th Cir.1985).

The standard which governs the computation of attorney's fees in this circuit is set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The criteria are as follows:

(1) the time and labor required;

(2) the novelty and the difficulty of the question involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment due to the acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) the time limitation imposed by the client or the circumstances;

(8) the amount involved and the result obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

Two law firms represented the Plaintiffs throughout the litigation: Jackson, Walker, Winstead, Cantwell & Miller in Dallas, Texas ("Jackson, Walker") and Kemp, Smith, Duncan and Hammond in El Paso, Texas ("Kemp, Smith"). Jackson, Walker requests an award of attorney's fees in the amount of $15,653.50 plus costs. Kemp, Smith requests an award with costs totalling $5,343.50 plus costs. Although this Court shall Order payment of Court costs by Defendants, the amount of such costs is a proper question for the Clerk of the Court and same shall not be considered herein.

The *Johnson* standard has been further refined by the Fifth Circuit's adoption of the "lodestar" method of calculating attorneys' fees. See *Graves v. Barnes*, 700 F.2d 220, 222 (5th Cir.1983). "The lodestar is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The lodestar is then adjusted to reflect other factors such as the contingent nature

of the suit and the quality of the representation."

It is well established this Court is empowered to exercise its informal discretion in awarding attorney's fees. *Greenhaw v. Lubbock County Beverage Association*, 721 F.2d 1019 (5th Cir.1983); *Graves v. Barnes*, 700 F.2d 220 (5th Cir.1983). In arriving at the appropriate amount, district courts "must explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors in *Johnson* affected his (or her) decision." *Copper Liquor, Inc. v. Adolph Coors Company*, 624 F.2d 575, 581 (5th Cir.1982) [*quoting: Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1300 (5th Cir.1978), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1978) ]. Although all twelve factors must be considered, the Court will pay "special heed to *Johnson* criteria numbers (1) the time and labor involved; (5) the customary fee; (8) the amount involved and the result obtained; and (9) the experience, reputation and ability of counsel." *Copper Liquor*, 624 F.2d at 583.

THE TIME AND LABOR REQUIRED

█ In determining the reasonableness of attorney's fees, the necessary starting point is to assess the amount of time spent by counsel on the case. *Johnson*, 488 F.2d at 717. In addition to a time sheet affidavit submitted by counsel, the Court should weigh the hours claimed by counsel in light of the Court's own experience and observations, and fashion a total time allowance which rationally reflects the services rendered. *Id.; McDonald v. Oliver*, 525 F.2d 1217, 1233 (5th Cir.), *cert. denied*, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). Moreover, investigation, clerical work, and other work which could be performed by a layperson should be distinguished from the time expended by counsel directed toward the merits. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir.1973); *Foster v. Boise-Cascade, Inc.*, 420 F.Supp. 674 (S.D.Tex.1976), *aff'd*, 577 F.2d 335 (5th Cir.1978). In addition, counsel should indicate whether the person performing each

task is a partner, associate or paralegal. *Johnson,* 488 F.2d 718, 719.

In support of Plaintiffs' request for attorney's fees, counsel submitted affidavits detailing the nature of the services rendered and the amount of time spent on such services. According to Plaintiffs' affidavits, Jackson, Walker spent a total of 127.3 hours of attorney time pursuant to the cause and Kemp, Smith spent 55.3 hours of attorney time. In light of the record, this Court is of the opinion the hours claimed are entirely too many for a file reflecting only minor discovery disputes, depositions totalling approximately 100 pages, a motion for summary judgment, a motion to strike jury demand and the pretrial order. Thus, this Court is of the opinion the attorney's fees award shall be reduced by dividing the number of hours claimed in half as to each firm. This Court shall base its award on 63.65 hours claimed by Jackson, Walker and 27.65 hours claimed by Kemp, Smith. Hours shall be cut in half as to each attorney or paralegal working on the case, resulting in a claimed fee of $7,826.75 for Jackson, Walker and $2,671.75 for Kemp, Smith.

## NOVELTY AND DIFFICULTY OF THE ISSUES

Plaintiffs in their affidavits concede this lawsuit did not present any particularly unique legal issues on the question of copyright infringement. This Court agrees, and the lodestar shall not be adjusted as a result of novelty or difficulty. The fact the parties engaged in some discovery battles does not elevate the case to a novel or difficult cause.

## THE SKILL REQUISITE TO PERFORM A LEGAL SERVICE PROPERLY

The best method the Court can utilize in assessing the skill of Plaintiffs' counsel is its own observation of the attorneys' work product. The Court finds counsel for Plaintiffs ably and skillfully performed the legal services involved in this litigation.

## THE PRECLUSION OF OTHER EMPLOYMENT BY THE ATTORNEY DUE TO ACCEPTANCE OF THE CASE

Counsel for the Plaintiffs inform the Court they were not required to turn work away due to the acceptance or preparation of the above-captioned cause. No adjustment to the lodestar shall be made on this basis.

## THE CUSTOMARY FEE

The court in *Johnson* declared that the district court should select an hourly rate which reflects the "customary fee for similar work in the community." 488 F.2d at 718. The court emphasized also the hourly rate should be varied by the district court in accordance with the type of work being considered. Jackson, Walker suggests an hourly rate of $200 for a partner, with rates decreasing for younger attorneys and paralegals. Kemp, Smith suggests an hourly rate of $170 per hour for a partner, with rates decreasing for younger attorneys and paralegals. This Court, in diminishing the claimed fees by one-half, arrived at a figure it considered reasonable for the case. Therefore, the Court shall not address the issue of reasonable hourly rate, as same is subsumed within the division of hours claimed.

## WHETHER THE FEE IS FIXED OR CONTINGENT

The affidavits of Plaintiffs' counsel reflect this factor is not relevant to the outcome of the attorney's fees issue.

## TIME LIMITATION IMPOSED BY CIRCUMSTANCES OR CLIENT

Time constraints were not a factor in this case.

## THE AMOUNT INVOLVED AND THE RESULTS OBTAINED

The time involved was addressed above and the results obtained shall not be a factor used to adjust the lodestar.

## THE EXPERIENCE, REPUTATION AND ABILITY OF THE ATTORNEYS

As evidenced by the record and the benefits conferred on Plaintiffs, the Court finds Plaintiffs have been ably served by their counsel who skillfully met the substantive and procedural challenges in this case.

## THE "UNDESIRABILITY" OF THE CASE

Plaintiffs' counsel do not claim this case contained undesirable aspects.

NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT

Counsel for the Plaintiffs did not address this issue and the Court shall not consider it as an adjusting factor to the lodestar.

AWARDS IN SIMILAR CASES

This Court bases its decision to discount the fees sought by counsel for the Plaintiffs on its experience with the hours billed in analogous cases in the community within the last year.

In light of the foregoing,

IT IS ORDERED Plaintiffs' Motion for Summary Judgment is hereby GRANTED.

IT IS FURTHER ORDERED Defendants are hereby enjoined from further performances of music from the radio in the restaurants in question unless or until such time as Defendants secure a license for same from the proper source(s).

IT IS FURTHER ORDERED Defendants shall be liable to Plaintiffs, jointly and severally, in the amount of $9,000.00 pursuant to Title 17 U.S.C. § 504.

IT IS ORDERED the firm of Jackson, Walker is entitled to reasonable attorney's fees in the total amount of $7,826.75. The firm of Kemp, Smith is entitled to reasonable attorney's fees in the amount of $2,671.75. Defendants are liable to Plaintiffs for same jointly and severally.

IT IS FURTHER ORDERED costs of Court shall be borne by the Defendants.

A separate Judgment shall issue this day.