Molly **MOODY**

v.

**COMMISSIONER, DEPARTMENT
OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued Nov. 1, 1994.

Decided June 20, 1995.

James R. Crotteau (orally), Pine Tree Legal Assistance, Inc., Bangor, for plaintiff.

Christina M. Hall, Christopher C. Leighton, Francis E. Ackerman (orally), Asst. Attys. Gen., Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

The Commissioner of the Department of Human Services (Department) appeals from the denial of its motion to reconsider a decision and order of the Superior Court (Kennebec County, *Crowley, J.*) requiring that notice be sent to certain Aid to Families with Dependent Children (AFDC) recipients informing them of their right to make claim to certain "gap" payments not paid to them by the Department in the past. We agree with the Department's contention that the notice relief ordered in this case relates solely to payment of retroactive welfare benefits, and therefore is barred by sovereign immunity. Accordingly, we vacate the judgment of the Superior Court.

Moody has two children and has been a recipient of welfare benefits from AFDC

since April 1985. As required by law, Moody assigned her rights to child support from the absent parent to the Department. After collecting child support payments assigned to it by AFDC recipients, the Department distributes a portion to the recipients in the form of "pass-through" and "gap" payments and keeps the balance. *See* 42 U.S.C.A. §§ 602(a)(28), 657(b) (1991 & Supp.1995). These additional payments are made to AFDC beneficiaries to cover the difference between the individual's determined need and the AFDC payments.

One method used by the Department to collect assigned child support payments is to intercept state and federal tax refunds sent to the absent parent. *See* 26 U.S.C.A. § 6402(c) (Supp.1995); 42 U.S.C.A. §§ 664, 666(a)(3) (1991 & Supp.1995). A federal regulation, 45 C.F.R. § 232.21(a) (1993), provided that amounts of child support collected by intercepting tax refunds were *not* to be distributed as gap payments, but were to be retained in full by the collecting state agency.

The only amounts of child support collected by the Department from the absent father in Moody's case were his federal income tax refunds in April 1987 ($260), June 1988 ($260), October 1989 ($260), and June 1990 ($385). Because the Department, in accordance with 45 C.F.R. § 232.21(a), did not include those funds in its calculation of gap payments to Moody, she received no gap payments. Moody filed a request for an administrative fair hearing seeking gap payments for April 1987 and June 1988. After an administrative hearing was held, a decision was issued in 1988 denying her relief.

Moody then filed a class action complaint in October of 1988 challenging 45 C.F.R. 232.21 and the nonpayment of the gap payments. At that time, *Doucette v. Ives,* 744 F.Supp. 23 (D.Me.1990), *aff'd in part and rev'd in part,* 947 F.2d 21 (1st Cir.1991), also involving a challenge to 45 C.F.R. 232.21, was pending in federal court. In December 1988, Moody's action was stayed pending the outcome of *Doucette.* On July 31, 1990, the federal district court invalidated 45 C.F.R. 232.21(a) and ordered the State to give notice of the outcome to AFDC recipients. *Doucette,* 744 F.Supp. at 27–29; *see also Doucette v. Ives,* 745 F.Supp. 763, 764–65 (D.Me. 1990).[1] Since the date of the decision, the Department has fully complied with *Doucette.*

After *Doucette* was decided, the Department agreed to make back gap payments to Moody and fifteen other identified recipients who had requested hearings to challenge the amount of gap payments received prior to or within six months after the entry of a final judgment in *Doucette.* The Department, however, refused to make such back payments to those who either failed to request hearings or did not request a hearing in a timely manner. Thus, the Department agreed to make a back gap payment to Moody for the tax returns intercepted in 1988, 1989, and 1990, but not in 1987.[2]

In November 1993, the Superior Court, in response to Moody's motion for a judgment on stipulated facts, found that Moody's 1987 claim and other claims for retroactive payment were barred by sovereign immunity and that immunity had not been waived. The court, however, went on to find that the annual statements provided by the Department to AFDC recipients did not give adequate notice in order for recipients to determine and protect their procedural rights to gap payments, and that this lack of notice violated their constitutional rights to due process. Accordingly, the court concluded that the time period for requesting a hearing to appeal gap payments had not been triggered, and ordered the parties to submit a description of the class consistent with its decision and the decision in *Doucette* so that the Department could send notice to all the class members to inform them of their rights

1. The United States District Court, acting on a motion for reconsideration, limited relief to all AFDC recipients eligible for AFDC as of the date the motion for class certification was filed. *Doucette v. Ives,* 745 F.Supp. 763, 764–65 (D.Me. 1990). The First Circuit Court of Appeals, because of the Eleventh Amendment and sovereign immunity, further restricted the notice relief to the members of the class *still eligible* for AFDC at the time of the District Court judgment. *Doucette v. Ives,* 947 F.2d 21 (1st Cir.1991).

2. Evidently, Moody did not file a timely challenge to the gap payment withheld in 1987.

to the gap payments they had not received prior to the *Doucette* decision.

Following the filing of the Department's motion for reconsideration, the Superior Court filed a second decision and order. Although the court rejected most of the Department's arguments, it modified the class description set out in the November order. This appeal by the Department followed.

The Department contends that the relief ordered by the Superior Court is retroactive and therefore barred by the doctrine of sovereign immunity. It argues that ordering notice is not an available form of relief when there is no ongoing violation of federal law; that the notice is not related to the possible payment of any prospective relief because the Department is and has been in complete compliance with all laws and regulations since the decision in *Doucette;* and that the notice ordered pertains solely to past violations and therefore is prohibited by sovereign immunity. We agree.

■ Sovereign immunity protects a state from liability for the payment of retroactive AFDC benefits unless the state waives the immunity by giving its consent to be sued, or acts in bad faith for a racially discriminatory or other constitutionally impermissible purpose. *Wellman v. Department of Human Servs.,* 574 A.2d 879, 884 (Me. 1990); *Thiboutot v. State,* 405 A.2d 230, 237 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). A retroactive award of monetary relief is in practical effect indistinguishable from an award of damages against the State. *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974).[3] Such an award "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials.... It is measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." *Id.* Participation in the federal AFDC program does not constitute waiver. *See id.* at 673–74, 94 S.Ct. at 1360–61. There

is no real contention in this case that sovereign immunity has been waived, nor is there any indication that the Department, in denying benefits *prior* to the decision in *Doucette,* was acting in bad faith or for a constitutionally impermissible purpose. Indeed, the benefits were being denied pursuant to a federal regulation, albeit a regulation later declared invalid in *Doucette.*

The Superior Court, citing *Vanscoter v. Bowen,* 706 F.Supp. 1432 (W.D.Wash.1988), *aff'd in part and rev'd in part sub nom. Vanscoter v. Sullivan,* 920 F.2d 1441 (9th Cir.1990), correctly concluded that AFDC recipients have a property interest in pass through child support payments and the failure to give them notice can amount to a violation of their rights to procedural due process. *Vanscoter,* 706 F.Supp. at 1438–39. The court, however, transgressed the doctrine of sovereign immunity by ordering retroactive notice relief when there is no ongoing violation of the law. Because all gap or pass through payments have been made to AFDC recipients since the decision in *Doucette,* the court's order relates only to those payments that were not made *prior* to *Doucette.*

■ Sovereign immunity bars notice relief when that relief relates solely to the payment of retroactive welfare benefits. *Green v. Mansour,* 474 U.S. 64, 71, 106 S.Ct. 423, 427, 88 L.Ed.2d 371 (1985). "Because 'notice relief' is not the type of remedy designed to prevent ongoing violations of federal law, [sovereign immunity] prevents [courts] from ordering it as an independent form of relief." *Id.* Although notice relief may be ordered requiring a state to give notice for the purpose of granting prospective relief, the parties have stipulated that the Department has complied with the decision in *Doucette,* has not violated any law since *Doucette,* and that all benefits due since its issuance have been and are being paid. Thus, the notice ordered can lead to no relief that is prospective, but only to monetary

---

**3.** The Eleventh Amendment to the United States Constitution precludes the federal courts from circumventing the sovereign immunity of the states. Although the Eleventh Amendment is not directly applicable to state courts, the doctrine of

sovereign immunity similarly protects the states from actions of state courts. *See Thiboutot,* 405 A.2d at 236–37; *Drake v. Smith,* 390 A.2d 541 (Me.1978).

awards from the state treasury for past violations of federal law. Sovereign immunity protects the state from any such order. *Edelman,* 415 U.S. at 677, 94 S.Ct. at 1362–63.

The State is protected by sovereign immunity even though the prior notice given to the class members was inadequate and may have constituted a denial of due process. The Department's actions were not in bad faith, and the notice was not deliberately inadequate because of some impermissible purpose. Accordingly, sovereign immunity bars the relief. *See Vanscoter,* 706 F.Supp. at 1441–42 (sovereign immunity limited notice relief to prospective relief even though prior notice given to AFDC recipients was inadequate and constituted denial of due process).[4]

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment for the defendant.

All concurring.

LIPEZ, Justice, concurring.

Although I recognize that our doctrine of sovereign immunity requires the result announced here, I am troubled by the Court's conclusion that "[t]he State is protected by sovereign immunity even though the prior notice given to the class members was inadequate and may have constituted a denial of due process." The proposition that relief from a due process violation of the Federal Constitution can be barred by a state doctrine of sovereign immunity is difficult to reconcile with the supremacy of the Federal Constitution. Nevertheless, I agree, in light of *Thiboutot v. State,* 405 A.2d 230, 236–37 (Me.1979), *aff'd on other grounds,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), and *Drake v. Smith,* 390 A.2d 541, 543, 546 (Me. 1978), that we have relied in the past on federal Eleventh Amendment sovereign immunity jurisprudence to develop our own doctrine of sovereign immunity. Plaintiffs have not challenged this reliance, choosing instead to argue, incorrectly, that the notice relief ordered by the Superior Court was prospective only and did not implicate sovereign immunity. Therefore, this is not a proper case in which to examine the incorporation of Eleventh Amendment principles into our state doctrine of sovereign immunity.

---

**4.** The result we reach in this case is consistent with our decision in *Wellman v. Department of Human Servs.,* 574 A.2d 879 (Me.1990), an action by an unwed but acknowledged father of a minor child seeking judicial review of the Department's determination that he reimburse the Department of the full amount of the AFDC payments made to the child's mother. Wellman's action was certified as a class action before the Superior Court. Although the court ordered the Department to provide notice relief to members of the class of their right to challenge whether the mother was eligible to received AFDC benefits, it precluded, on grounds of sovereign immunity, anything but prospective relief to members of the class who prevailed in their challenge. *Id.* at 884.

On appeal, we affirmed the order of the Superior Court, noting that the relief due Wellman was prospective in nature because he had appealed the administrative order requiring him to reimburse the Department and had made no reimbursements. *Id.* at 884 n. 11. Because Wellman made no reimbursements, the State owed him no money. Thus, the relief ordered by the Superior Court was wholly prospective in nature. We contrasted the position of Wellman with that of other members of his class who might have reimbursed the State, specifically noting that sovereign immunity would bar retroactive relief in the form of reimbursement similar to those barred by sovereign immunity in *Wellman.*