Patricia DION, Plaintiff, Appellee,

v.

COMMISSIONER, MAINE DEPART-
MENT OF HUMAN SERVICES,
Defendant, Appellee.

Clayton Yeutter, Secretary of
Agriculture, Third–Party
Defendant, Appellant.

No. 90–1896.

United States Court of Appeals,
First Circuit.

Heard Jan. 9, 1991.

Decided May 7, 1991.

Jeffrey A. Clair, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Richard S. Cohen, U.S. Atty., and Robert S. Greenspan, Appellate Staff, Civ. Div., Dept. of Justice, were on brief, for third-party defendant, appellant.

Mary T. Henderson with whom Jack Comart, Pine Tree Legal Assistance, was on brief, for plaintiff, appellee.

Before CAMPBELL and SELYA, Circuit Judges, and POLLAK,* Senior District Judge.

LEVIN H. CAMPBELL, Circuit Judge.

This appeal involves the treatment, for the purposes of determining food stamp eligibility, of the income of a teenaged parent who is the head of her own food stamp household. The Secretary of the United States Department of Agriculture appeals from the district court's judgment invalidating the Secretary's regulation that effectively precludes a teenaged parent from simultaneously claiming the benefit of the child income exclusion under 7 U.S.C. § 2014(d)[1] and establishing her own food stamp household under 7 U.S.C. § 2012(i)(3).[2]

I.

At the times relevant to this appeal, plaintiff Patricia Dion was a 17–year-old single mother, living with her parents and her infant daughter, Cassandra. In the spring of 1988, she applied for food stamps as the head of her own household. Despite the fact that she lived with her parents, she

* Of the Eastern District of Pennsylvania, sitting by designation.

1. Section 2014(d) of the Food Stamp Act provides that "household income shall include all income from whatever source excluding ... (7) income earned by a child who is a member of the household, who is a student, and who has not attained his eighteenth birthday...."

2. 7 U.S.C. § 2012(i)(3) provides that "a parent of minor children and that parent's children (notwithstanding the presence in the home of any other persons, including parents and siblings of the parent with minor children) who customarily purchase food and prepare meals for home consumption separate from other persons" may establish a separate food stamps household.

was able to establish her own household because she purchased and prepared food for herself and her child separately. *See* 7 U.S.C. § 2012(i)(3). Under the applicable regulation, she also had to establish or stipulate that she was not under parental control. 7 C.F.R. § 273.1(a)(2)(i).[3] Having met these requirements, she received food stamp benefits for herself and her child as a separate household.

Plaintiff Dion attended school full-time and earned income from a part-time job at a local grocery store. When she applied for food stamps, she reported her earned income to the Maine Department of Human Services, the state agency responsible for administering the food stamp and AFDC programs in Maine. Notwithstanding the statutory child income exclusion under 7 U.S.C. § 2014(d)(7), the state took this income into account when calculating her AFDC and food stamp benefit levels for the period between May 1988 and February 1989. Consequently, Dion received lower benefits under each program than she would have received had her income been excluded from the calculation. In refusing to exclude Dion's income, the state relied upon the regulation challenged herein limiting the child income exclusion to those persons "under the parental control of another household member." 7 C.F.R. § 273.9(c)(7).

In February, 1989, the plaintiff requested an administrative hearing on the question of whether her earned income should be included in calculating her AFDC and food stamp grants. On March 30, 1989, the state hearing officer, after conducting an evidentiary hearing, found that the state had correctly included Dion's income in determining her AFDC and food stamp benefits. On April 29, 1989, Dion appealed the administrative decision to the Maine Superior Court, naming the Commissioner of the Maine Department of Human Services as defendant. The Commissioner removed the case to the United States District Court for the District of Maine and filed third-party complaints impleading the Secretary of Health and Human Services and the Secretary of Agriculture as federal defendants. The parties then filed cross-motions for judgment based on a stipulated district court record and statement of facts.

The district court reversed the agency's food stamp determination and held that the Department of Agriculture's regulation limiting the § 2014(d)(7) child income exclusion to persons under parental control was inconsistent with congressional intent and therefore invalid. *Dion v. Comm'r, Maine Dep't of Human Services,* 743 F.Supp. 80 (D.Me.1990). Although the court conceded that the scope of the statutory exclusion was somewhat ambiguous, it concluded that the statute required the exclusion of Dion's income because the term "child" referred broadly to all young persons, not only those who are dependents. The court noted the language limiting the income exclusion to young persons under the age of eighteen. The district court believed that its interpretation was consistent with the legislative history, which suggested that Congress enacted the exclusion to avoid the administrative inconvenience of counting small and difficult to document sums of money. Moreover, excluding Dion's income would be consistent with Congress' intent to encourage children in food stamp households to stay in school. The district court thus declared invalid 7 C.F.R. 273.-9(c)(7) to the extent that the regulation limited the income exclusion to persons who remain under the parental control of another household member.[4]

## II.

Our review of the Secretary's interpretation of the Food Stamp Act is governed by the two-step test articulated by the Supreme Court in *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* we must first determine

---

**3.** 7 C.F.R. 273.1(a)(2)(i) provides that certain groups, including "[c]hildren under 18 years of age *under the parental control of an adult household member,*" "shall be considered as customarily purchasing food and preparing meals together, even if they do not do so...." (Emphasis supplied).

**4.** The district court affirmed the state's AFDC determination. The plaintiff has not cross-appealed from this aspect of the judgment. This court, therefore, dismissed the Secretary of Health and Human Services from the case. The AFDC portion of the district court's judgment is not at issue here.

whether "Congress has directly spoken to the precise question at issue." 467 U.S. at 842, 104 S.Ct. at 2781. If Congress' intent is clear, both the court and the agency must give effect to that intent. *Id.* In determining congressional intent, we must use "traditional tools of statutory construction," *NLRB v. Food and Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1987), including consideration of the language, history, and purpose of the statute. *See K–Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988); *Massachusetts v. Lyng,* 893 F.2d 424 (1st Cir.1990). If this analysis does not reveal clearly the intent of Congress, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. As, like the court below, we believe the statute is clear as to the intent of Congress, we affirm the district court's invalidation of the Secretary's regulation.

A. *Statutory Language*

Section 2014(d) of the Food Stamp Act provides that "[h]ousehold income shall include all income from whatever source excluding ... (7) income earned by a child who is a member of the household, who is a student, and who has not attained his eighteenth birthday...." The issue in this case is whether any member of the household, including the head of the household, is entitled to have her income excluded from the calculation of that household's income so long as she is a student and is under the age of eighteen. The question, then, is whether the word "child," as used in the statute, may be interpreted to impose restrictions beyond those expressly stated.

The plaintiff contends that the plain language of the statute permits only one interpretation. Citing the dictionary definition of child, the plaintiff argues that Congress intended only to refer to a young person—a child as opposed to an adult. She acknowledges some ambiguity as to the point at which a young person ceases to be a child; however, she argues that Congress specifically clarified this ambiguity by supplying the eighteen-year-old cutoff. The plaintiff

also notes that, elsewhere in the statute, Congress used the term child to refer to a youthful person, not to denote a particular position or legal relationship within the family structure. For example, the statute exempts from work requirements individuals who lack child care for "children above the age of five and under the age of twelve," 7 U.S.C. § 2015(d)(1)(A)(iii), and those who must care for a "dependent child under the age of six." 7 U.S.C. § 2015(d)(2). In another section, the statute requires the dissemination of information about the nutritional needs of "children and adults." 7 U.S.C. § 2020(e)(14)(A). The plaintiff also notes that Congress used the phrase "dependent child" to express a concept similar to parental control when it intended to impose such a limitation. Therefore, that limit should not be read into the statute where Congress left the term "child" unmodified.

In contrast to the interpretation urged by the plaintiff, the Secretary, reads "child" as signifying familial relationship—a minor whose role is that of a "child" as opposed to one whose role is that of a "parent." Thus, implementing regulations provide that "[i]ndividuals are considered children for the purposes of [Section 2014(d)] if they are under the parental control of another household member." 7 C.F.R. 273.-9(c)(7). The Secretary argues that, interpreting child to mean a young person under the age of eighteen, reads the term "child" out of the statute. Had Congress intended to refer to any minor meeting the other criteria for the income exclusion—household membership, school attendance, and age under eighteen—it would have used a more general term such as "any individual" or "a person" rather than "child." The Secretary also points to other parts of the statute in which "child" is used to signify familial relationship, not simply age. For example, the plaintiff's ability to qualify as a separate household, despite the fact that she lives with her own parents in their home, is based on her status as the parent of "minor children." 7 U.S.C. § 2012(i)(3).

Although the term "child" doubtless has shadings of meaning in various contexts,

we find little in the Food Stamp Act to support the Secretary's restrictive meaning. Throughout the Act, Congress most commonly used the term "child" simply to delineate the responsibilities and obligations of adults within a household. *See, e.g.,* 7 U.S.C. § 2015(d)(1)(A)(iii) (establishing the lack of adequate child care for children above the age of five and under the age of twelve as a legitimate basis to refuse employment); 7 U.S.C. § 2015(d)(2)(B) (exempting caretakers of children under the age of six from work requirements). Congress generally did not limit these "childcare responsibility" exceptions to parents but explicitly extended them both to "parents or other member[s] of the household with responsibility for the care of a dependent child." *Id. But see* 7 U.S.C. § 2015(e)(3)(B) (exempting from work requirements a student who is "a parent with responsibility for the care of a dependent child under age six"). In these sections of the Act, therefore, the term "child" is used in reference to the set of responsibilities faced by adults within the household as a result of the child's presence, whether or not the responsibility stems from a familial relationship.

The definition of household is the only part of the statute in which Congress has attached particular significance to familial relationship as opposed to the broader focus on the actual needs and responsibilities arising from the relationship among household members, whether familial or not. 7 U.S.C. § 2012(i)(3) establishes a presumption that "parents and children, or siblings, who live together" constitute a household under the Act, regardless of whether they actually purchase and prepare food together. In 1987, however, Congress created an exception to this presumption for "a parent of minor children and that parent's children ... who customarily purchase food and prepare meals for home consumption separate from other persons." 7 U.S.C. § 2012(i)(3). In light of the particular significance the section attaches to the parent-child relationship, the Secretary reads the language as supporting his interpretation of "child" as one under the parental control of another household member. We think, however, that the exception simply represents a return to the original household concept based on units of food purchase and preparation.[5]

Despite the Secretary's assertion that "child" in § 2014 should be read to embody the concept of parental control, nowhere in the statute has Congress explicitly used the concept of parental control to define the status of children under the Act. Moreover, when Congress intended to exclude minors who head their own households, it did so explicitly. *See, e.g.,* 7 U.S.C. § 2015(d)(2)(F) (excluding from work requirements "a person between the ages of sixteen and eighteen *who is not a head of a household*") (emphasis supplied).

Thus, we are not persuaded by the Secretary's argument that the term "child" as used in § 2014(d) either suggests a minor under parental control or is ambiguous in that respect. Nevertheless, we turn to the legislative history and purpose of the Act for further clarification of the intended scope of the child income exclusion.

### B. *Legislative History and Purpose*

The legislative history of the child income exclusion is relatively sparse. The exclusion seems to have been based on a preexisting regulation which limited the child income exclusion to unemancipated minors. The regulation quoted in the House Agriculture Committee report provided that " 'if the student is an emancipated minor [ ] he no longer can be considered a child residing in the household.' " H.R.Rep. No. 464 at 36, *reprinted in* 1977

---

**5.** Although the type of household arrangement at issue in this case was permitted under the 1977 Act and implementing regulations, so long as the child was not under parental control, 43 Fed.Reg. 47889 (1978), the Act was amended in 1981 to prevent parents and children who live together from establishing separate food stamp households. Pub.L. No. 97–35, § 101(1), 95 Stat. 358 (1981). The McKinney Homeless Assistance Act, Pub.L. No. 100–77, § 802, 101 Stat. 534 (1987), created an exception to this rule which permitted separate household status for "a parent of minor children and that parent's children (notwithstanding the presence in the home of [the] parents and siblings of the parent with minor children)...."

U.S.Code Cong. & Admin.News at 1704, 2013 (quoting Department's instructions). Although the legislative history quotes the regulation in full and indicates that the proposed legislation would "retain this exclusion," *see id.*, the Act itself omitted any reference to unemancipated minors. The plaintiff argues that Congress' omission of the "unemancipated" limit reflects its intention to extend the exclusion to *all* household members who are full-time students and under the age of eighteen. The Secretary suggests that, absent any clear expression of such an intent, no significance should be attached to the omitted language. Rather, Congress simply intended to "retain this exclusion" as defined in the regulations. Although Congress should not be deemed to have accepted language that it, in fact, considered and rejected, *INS v. Cardoza–Fonseca*, 480 U.S. 421 at 442–43, 107 S.Ct. 1207 at 1218–19, 94 L.Ed.2d 434 (1987), there is no evidence that Congress considered the policy implications of either extending the exclusion to all student-earners or limiting it to those within their parents' household. Thus, the exclusion of the language concerning "emancipated minors," while significant, is less than conclusive.

Apart from quoting existing regulations and stating an intention to "retain this exclusion," the House Report contains one expressly articulated legislative purpose behind the child income exclusion—an effort to avoid counting small and irregularly received sums of money. The Report suggests that "[a]ny attempt to include child earnings would create administrative complexity and result in the counting of small and difficult to document sums of money." H.R.Rep. No. 464 at 36, *reprinted in* 1977 U.S.Code Cong. & Admin.News at 1704, 2013. Although no other objective is expressly set forth in the legislative history, the limitation of the exclusion to students strongly suggests that Congress also intended to provide an incentive for young people to remain in school rather than enter the work force full time.

The plaintiff argues that her reading of the exclusion as applicable to all student-earners under the age of eighteen is the only plausible reading in light of the legislative history and purpose. She notes that the concern for accounting efficiency apply equally well to teenagers who head their own households. Moreover, these teenagers who are not under parental control would perhaps benefit even more from the economic incentive to stay in school because they may lack parental guidance with respect to the importance of education and may experience greater economic pressure to work full time.

The Secretary, however, offers several countervailing arguments in support of his contention that the agency interpretation is consistent with the legislative history and purposes of the statute. First, he suggests that Congress did not intend, in the name of administrative convenience, to exclude *all* small amounts of money from the income calculation. Rather, Congress excluded only certain categories of income. While this assertion is certainly correct, we do not readily see its significance. The child income exclusion is among the categories of income explicitly excluded by Congress—that Congress chose not to exclude all comparable categories of income does not leave the agency free to add to or limit the categories expressly enumerated.

The Secretary also suggests that, in a single parent household headed by a teenager, the teenager's income will not be small relative to the total household income, nor is such income inherently difficult to count. Indeed, that income will likely constitute the entire household income and may in fact be quite regular and substantial. Whether or not this assertion is true, Congress nowhere suggested in the statutory language and legislative history concerning the categories of income excluded for the purposes of calculating household income that their exclusion should depend on their size *relative* to the total household income. Rather, Congress itself made a determination as what sources of income should be excluded in the interest of administrative efficiency, and presumably balanced the costs of broad categorical exclusions against the difficulty of individualized determinations.

Finally, the Secretary argues that the agency regulation is consistent with the legislative goal of encouraging teenagers to remain in school. The teenaged parent "can obtain the full benefit of the income exclusion by staying in school and remaining in a household maintained by his or her parents." Reply Brief for Appellant at 8. That the teenaged parent loses these economic incentives when she assumes the adult responsibilities of maintaining a separate household is not inconsistent with the Act. The Secretary notes the regulations "merely create[ ] an economic incentive to remain under the care and supervision of more mature members of the household." *Id.* at 9. The Secretary goes so far as to suggest that this objective is "better served by regulatory provisions that create economic incentives for the teenager to remain under the care, supervision, and control of more mature members of the family." Brief for Appellant at 18. It is the Secretary's regulatory scheme, however, not the statute, that forces the teenaged parent to choose *either* to remain under parental control *or* to establish an independent household—under the regulations, she may not do both.[6]

Despite the Secretary's characterization of the parental control requirement as reinforcing the statutory goals of the child income exclusion, the economic incentives created by the intersection of the two regulations actually undermine the legislative purposes of the income exclusion. Under 7 U.S.C. § 2012(i)(3), a teenaged parent who lives within her parents' home may apply for food stamps on behalf of herself and her child as a separate household. In order to qualify for separate household status, she must not only purchase and prepare food separately, she must also deem herself "not under parental control." 7 C.F.R. 273.1(a)(2). Of course, once she so stipulates, she is no longer permitted to exclude her income from the calculation of household income. Thus, her decision to establish a separate household will depend upon the value of this income exclusion.

Under the Secretary's scheme, the more the teenaged parent earns relative to her parents' household income, the less her incentive will be to establish a separate household. This is because, at some point, she and her family will be better off receiving the food stamp allotment for the larger household based on her parents' income alone. If her income is high relative to her parents', her share of the food stamp allotment for the larger household, combined with her own income, which would be excluded from the household income, could exceed her allotment as a separate household.[7] On the other hand, if the teenaged parent makes relatively little compared to her parents, the child income exclusion will be less valuable to her, and she will be

---

**6.** In effect, the agency interpretation imposes an additional condition on the child earnings exclusion—that the teenaged student-earner be under parental control. As far as we can determine, however, the agency has not developed independent standards for establishing whether a teenage parent is under the parental control of another household member. Rather, the agency seems to accept the teenager's stipulation on this point. At oral argument, counsel for the Secretary alluded to a "totality of the circumstances test" for determining parental control; however, counsel conceded that "as a practical matter" the agency will not look beyond the applicant's representation as to parental control.

This suggestion is also supported by the record of the Fair Hearing in this case. Susan Gray, the Income Maintenance Specialist in Ms. Dion's case stated: "Income of children is exempt if they're under parental control of another household member, which Patricia is not *because she has stated that she is a separate household from her parents*" (emphasis added).

For the purposes of the child income exclusion, one might well ask why a teenager would ever declare herself free from "parental control," thereby disqualifying herself from the benefits of the exclusion. However, a separate regulation requires the teenaged parent to stipulate that she is not under parental control in order to establish her own food stamp household. 7 C.F.R. § 273.1(a)(2). Thus, the combination of the two regulations precludes a teenage parent from qualifying both as a child and as the head of her own household.

**7.** If, for example, her income exceeded the maximum level for food stamp eligibility, the teenaged parent obviously would be better off remaining in her parents' food stamp household where her income would be excluded from the calculation of household income. Although unlikely as an empirical matter, this example illustrates the effect of the regulations on the teenaged parents' choices.

 

better off establishing a separate food stamp household for herself and her child.

By creating a trade-off between the availability of the child income exclusion and separate household status, the regulations lead to a situation in which teenaged parents who earn the *least* have the greatest incentive to establish separate households while those who earn the *most* are more likely to remain in their parents' household.[8] This anomalous result undermines Congress' goal of accounting efficiency in that the income of teenaged parents whose earnings are the smallest and least regular will be included in the determination of household income while the income of teenagers who have steady, relatively well-paying jobs will be excluded from the calculation of household income. This incentive structure also perversely limits the economic incentive for teenagers to remain in school. Those teenagers who arguably would benefit the most from § 2014(d)'s incentive to remain in school—teenaged parents who earn relatively little—are deprived of that incentive.

If, as the statute seems to require, all income earned by a child who is under the age of eighteen and a student is excluded from the calculation of household income, teenaged parents will not be forced to trade off the income exclusion against the benefits of establishing a separate household. Under this scheme, teenaged parents will be more likely to establish separate households; however, this is fully consistent with Congress' 1987 amendment to the Act which expressly *permits* such an arrangement. *See supra* note 5. Finally, we note that the Secretary has not argued that the regulation is necessary to limit potential double-counting or to reduce the likelihood of fraud. Although in the absence of the regulation, a teenaged parent may qualify both as the head of her own household and as a child member of that household, nothing in the statute prevents her from being considered both a parent and a child—indeed, as the plaintiff points out, teenaged parents are precisely that.

III.

Our analysis of the plain language of the child income exclusion, 7 U.S.C. § 2014(d), and its legislative history lead us to the same conclusion reached by the district court, namely, that Congress intended the exclusion to apply to all household members under the age of eighteen. The Secretary's regulation limiting the exclusion to income earned by children who are under the parental control of another household member is therefore invalid, as it conflicts with the Congressional language and purpose.

The district court judgment is *affirmed.* Costs to appellees.

---

8. Because the statute permits teenage parents to establish separate households while living with their own parents, they need not weigh the costs of separate housing in their decision to establish a separate household.