**Vivian WINSLOW, et al., Plaintiffs,**

v.

**COMMISSIONER, MAINE DEPARTMENT OF HUMAN SERVICES, Defendant and Third–Party Plaintiff,**

v.

**Louis W. SULLIVAN, M.D.,
Third–Party Defendant.**

**Civ. No. 90–0297–B.**

United States District Court,
D. Maine.

July 28, 1992.

James R. Crotteau, Pine Tree Legal Assistance, Inc., Machias, Me., for plaintiffs.

Marina E. Thibeau, Asst. Atty. Gen., Augusta, Me., for defendant.

David R. Collins, Asst. U.S. Atty., Portland, Me., Nancy Nemon, U.S. Dept. of Health & Human Services, Boston, Mass., for third-party defendant.

### ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

In this class action challenging the reasonableness of the income eligibility levels [1] set by the Maine Department of Human Services ("DHS") for the Maine Medicaid program, all parties filed motions for judgment on a stipulated record. The Third–Party Defendant also filed a motion to dismiss the third-party complaint. For the reasons stated below, the Court *GRANTS* the Third–Party Defendant's motion to dis-

---

**1.** Maine calls Medicaid income eligibility levels Protected Income Levels or PILs. The United States Department of Health and Human Servic-

es ("HHS") refers to income eligibility levels as Medically Needy Income Levels or MNILs. The Court will use HHS's term.

miss and *DENIES* the Plaintiffs' motion for judgment on a stipulated record.

### I. *Background.*

Congress established the Medicaid program in 1965 "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). In Maine, Medicaid coverage is extended to both the "categorically needy" and the "medically needy." Recipients of Social Security Income ("SSI") benefits and recipients of Aid to Families with Dependent Children ("AFDC") benefits were deemed "categorically needy" and are automatically eligible to receive Medicaid benefits. According to Congress, "[t]hese people are the most needy in the country and it is appropriate for medical care costs to be met, first, for these people." H.R.Rep. No. 213, 89th Cong., 1st Sess. 66 (1965).

Persons who do not qualify for SSI or AFDC benefits because their incomes exceed certain thresholds were deemed "less needy" by Congress. *Schweiker v. Hogan*, 457 U.S. 569, 573, 102 S.Ct. 2597, 2601, 73 L.Ed.2d 227 (1982). They may become eligible for Medicaid benefits if their incomes prove inadequate to "meet the costs of necessary medical or remedial care and services" and they become "medically needy." *Id.* (quoting 79 Stat. 345 as amended, 42 U.S.C. § 1396a(a)(10)(C)).

States are not required to provide Medicaid benefits to the medically needy. If a state does elect to provide benefits, federal law requires MNILs to be reasonable and to fall within Federal Financial Participation ("FFP") limitations prescribed by 42 U.S.C. § 1396b(f).

Changes in MNILs may go into effect immediately. A plan amendment justifying the changed MNILs must be submitted to HHS for review. MNILs may either be "presumed reasonable," 42 C.F.R. § 435.-812(b)(1), or may be determined to be reasonable by HHS, 42 C.F.R. § 435.812(e). MNILs are presumed reasonable if they are equal to the highest need or payment standard used to determine eligibility. 42 C.F.R. § 435.812(b).

Once a plan amendment is submitted, HHS has ninety days to approve, disapprove, or request more information regarding the reasonableness of a state's revised MNILs. If HHS takes no explicit action, the revised MNILs are deemed to have been approved. If HHS requests additional information, HHS is granted an additional ninety days for review from the date the state submits the requested information. If HHS finds that the MNILs are reasonable, the federal government provides FFP payments to the state which are retroactive to the effective date of the MNILs. If the MNILs are determined to be unreasonable, the state will not receive FFP payments.

In July 1991, Maine's MNILs were revised after the state legislature, in response to a budget crisis, amended 22 M.R.S.A. § 3174 to reduce Medicaid benefits. Maine's current MNILs became effective in November 1991. DHS submitted a plan amendment to HHS for review on December 31, 1991.

The parties finished briefing their motions for a judgment on a stipulated record shortly before the initial ninety day review period was set to expire. When the Court inquired on April 1st about the status of Maine's plan amendment, it was informed that HHS requested additional information which Maine had not yet supplied. When the Court inquired again in mid-July, it was informed that Maine still had not supplied requested information. Consequently, HHS has not approved or disapproved of Maine's current MNILs, and evidently no decision is imminent.

### II. *Discussion.*
#### A. Motion to Dismiss.

■ Local Rule 19(c) provides that unless an opposing party files a written objection within ten days after a motion is filed, the opposing party will be deemed to have waived objection. This Court will generally grant an unopposed motion to dismiss if it is not frivolous. *Compare Redman v. Federal Deposit Ins. Co.*, Civ. No. 91–279–P–C, 794 F.Supp. 20 (D.Me. July 15, 1992)

**49**

(Carter, C.J.) (unopposed motion for summary judgment not automatically granted).

After the Plaintiffs and the Defendant filed motions for judgment on stipulated facts, the Third–Party Defendant filed a motion to dismiss the third-party complaint or in the alternative for judgment on stipulated facts. The Defendant never responded. When this lawsuit was originally filed in 1990, Maine provided Medicaid benefits that were near the maximum allowed under federal law. Because Maine was concerned that the Plaintiffs' suit might force recalculation of MNILs so that they exceeded FFP ceilings, DHS filed a third-party complaint seeking to bind HHS to the outcome in this case. In July 1991, however, Maine sharply reduced Medicaid benefit levels. Now, even if Plaintiffs' suit were successful, Maine's MNILs would not exceed FFP limits. The Court, therefore, GRANTS the Third–Party Defendants' motion to dismiss the third-party complaint.

### B. Motions for Judgment on Stipulated Record.[2]

■ Plaintiffs contend that Maine's MNILs cannot be presumed reasonable under 42 C.F.R. § 435.812(b)(1) "because they are less than the highest need or payment standard used to determine AFDC eligibility in Maine." Plaintiffs' Memorandum In Support of Motion for Judgment on Stipulated Facts at 6. Eligibility for AFDC benefits in Maine is determined by comparing a household's countable income against a "standard of need" and a "maximum payment standard." AFDC grants are calculated by subtracting countable income from the "standard of need." The AFDC payment may not, however, exceed the "maximum payment standard." Because the "standard of need" exceeds the "maximum payment standard" there is a "gap." An AFDC recipient may "fill the gap" with outside income before his or her AFDC payment is reduced.

The Plaintiffs' challenge focuses on the complex rules governing how child support rights, which an AFDC recipient assign to the state as a condition of eligibility, 42 U.S.C. § 602(a)(26)(A), are treated in calculating MNILs. Under federal law, the first $50.00 of current child support collected is passed through to an AFDC recipient and does not affect eligibility or the amount of the AFDC payment. 42 U.S.C. § 602(a)(8)(A)(vi) & 657(b)(1). In addition, because Maine permits AFDC recipients to receive income to "fill the gap" between the maximum payment standard and the standard of need, it is required to make "supplemental" or "gap payments" of collected child support to AFDC recipients. 42 U.S.C. § 602(a)(28).

The Plaintiffs contend that "gap payments" should be deemed to be AFDC payments and that the state should be required to calculate MINLs on the assumption that one hundred percent of AFDC recipients receive the maximum possible "gap payment" each month. Plaintiffs are seeking declaratory and injunctive relief invalidating the MNILs currently in effect in Maine and requiring Maine to recalculate MNILs to include the theoretical maximum supplemental payment an AFDC recipient could receive under 42 U.S.C. § 602(a)(28).

The fundamental flaw with Plaintiffs' proposed interpretation of the Medicaid statutes and regulations is that it would require Maine to treat those whom Congress deemed "less needy" more favorably than those Congress deemed "most needy." According to the stipulated facts, less than twenty-five percent of AFDC households receive *any* child support "gap payments." *See* Stip. ¶¶ 21, 22. Furthermore, the actual payments made are generally a small fraction of the amount necessary to "fill the gap."

Calculating MNILs for the medically needy by adding the maximum possible child support "gap payment" to the basic AFDC payment would mean that all of the "less needy" families would be permitted to keep and spend almost twenty percent more on non-medical living expenses than families of comparable size whom Congress believed were "most needy" and most de-

---

**2.** The case was submitted for decision under the procedures described in *Boston Five Cents Savings Bank v. Secretary of Housing and Urban Development,* 768 F.2d 5 (1st Cir.1985).

**50**

serving of federal aid. *See* Plaintiffs' Memo, Table 1.

Time-honored maxims of statutory construction compel this Court, whether the statutory language is deemed ambiguous or unambiguous, to avoid an interpretation which leads to an absurd result plainly at odds with Congress' intent. *E.g., United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)) (plain meaning not controlling when " 'demonstrably at odds with the intention of its drafters' "); *see also* Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 S.Cal.L.Rev. 845, 848–49 (1992) (citing Blackstone and *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)). Plaintiffs' construction cannot be sustained. Plaintiffs' request for declaratory and injunctive relief is DENIED.

III. *Conclusion.*

The Third–Party Defendant's unopposed motion to dismiss the third-party complaint is GRANTED. Because it would make little sense to interpret language in the Medicaid statutes and regulations to require states to favor welfare recipients whom Congress deemed "less needy" at the expense of welfare recipients Congress deemed "most needy," the Plaintiffs' motion for judgment on a stipulated record is DENIED.

SO ORDERED.