**Christine STOWELL, et al., Plaintiffs,**

v.

**Louis SULLIVAN, M.D., Secretary, United States Department of Health & Human Services, Defendant.**

**Civ. No. 92–125–P–C.**

United States District Court,
D. Maine.

Jan. 29, 1993.

---

Jack Comart, Pine Tree Legal Assistance, Augusta, ME, for plaintiffs.

David Collins, Asst. U.S. Atty., Portland, ME, for defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

GENE CARTER, Chief Judge.

The United States Magistrate Judge having filed with the Court on December 17, 1992, with copies to counsel, his Recommended Decision on Merits Based on a Stipulated Record (Docket No. 36), a copy of which is attached hereto and made a part hereof as "Exhibit A"; and Plaintiffs having filed their objection thereto on January 11, 1993 (Docket No. 39), to which objection the Maine Department of Human Services, as *amicus curiae*, and Defendant filed their objections on January 19, 1993 (Docket Nos. 40 and 41, respectively); and this Court having reviewed and considered the Magistrate Judge's Recommended Decision, together with the entire record; and this Court having made a *de novo* determination of all matters adjudicated by the Magistrate Judge's Recommended Decision, and concurring with the recommendations of the United States Magistrate Judge for the reasons set forth in his Rec-

ommended Decision, and having determined that no further proceeding is necessary; it is ORDERED * as follows:

(1) The Recommended Decision of the Magistrate Judge is hereby AFFIRMED;

(2) Judgment is hereby ENTERED for the Defendant.

## EXHIBIT A

### UNITED STATES DISTRICT COURT

### DISTRICT OF MAINE

Christine Stowell, et al., Plaintiffs

v.

Louis Sullivan, M.D., Secretary, United States Department of Health & Human Services, Defendant

Civil No. 92–125–P–C

### RECOMMENDED DECISION ON MERITS BASED ON A STIP-ULATED RECORD [1]

DAVID M. COHEN, United States Magistrate Judge.

This class action raises the question whether the Secretary of the federal Department of Health and Human Services ("Secretary") has failed to fulfill a statutory duty to enforce 42 U.S.C. § 1396a(c)(1) which requires that he not approve any state Medicaid plan if the state has in effect an Aid–to–Families–with–Dependent–Children ("AFDC") plan with payment levels less than those in effect on May 1, 1988.[2] The plaintiff class [3] specifically contends that Maine's decision to lower its AFDC "standard of need" [4] by 3.5% effective March 1, 1992,[5] resulting in a smaller gross cash payment to class members each month, effectuated a reduction in "payment levels" below those in effect on May 1, 1988. Proceeding under section 702 [6] of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, the class seeks a declaratory judgment that the AFDC payment levels reflected in the modified Maine regulations are less than those in effect on May 1, 1988 and an order requiring the Secretary to take all steps available to him, including the withholding of federal Medicaid funds, to enforce the provisions of 42 U.S.C. § 1396a(c)(1) so long as AFDC pay-

* Plaintiffs have moved for a special hearing to present oral argument (Docket No. 38) because of the scope and seriousness of the result of the Magistrate Judge's Recommended Decision if adopted by this Court. The Court has carefully considered the substantive merits of the issues generated before the Court and the analysis provided by the Magistrate Judge. The scope and seriousness of the effect of the Court's actions provide no basis to challenge the thoughtful and obviously correct analysis of the Magistrate Judge. The Court DECLINES to hear oral argument.

1. See Procedural Order dated May 15, 1992 (Docket Item 23).

2. The state of Maine participates in AFDC and Medicaid, both of which are cooperative federal-state financial assistance programs. The former provides cash assistance to needy families with dependent children. See generally Title IV–A of the Social Security Act ("Act"), 42 U.S.C. §§ 601–617. The latter provides medical assistance to families with dependent children and aged, blind or disabled individuals whose income and resources are insufficient to meet the costs of necessary medical services. See generally Title XIX of the Act, 42 U.S.C. §§ 1396–1396u.

3. The class is defined as follows:
   All families in the State of Maine who would be eligible for AFDC benefits and/or supplemental payments under 42 U.S.C. § 602(a)(28) under the AFDC payment levels in effect in Maine on May 1, 1988 and who would receive a smaller total AFDC plus supplemental § 602(a)(28) payment under the AFDC payment levels proposed to be effective April 1, 1992 than they would have received under the May 1, 1988 payment levels.

4. "Standard of need" represents the cost of those items of living that the state determines are essential for basic subsistence, such as food, shelter and clothing. See Medical Assistance Manual, § 4–20–10(E)(1)(b), Exh. E to Stipulated Record (Docket Item 26).

5. Because of the issuance by this court of a temporary restraining order in Stowell v. Ives, 788 F.Supp. 40 (D.Me.) (Carter, C.J.), aff'd, 976 F.2d 65 (1st Cir.1992), the effective date became April 1, 1992.

6. Section 702 provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

ment levels in Maine are less than the May 1, 1988 levels and to pay, retroactive to April 1, 1992, the federal portion of the AFDC payments in issue. The parties have submitted the case for judgment on a stipulated record. Any factual disputes may therefore be resolved by the court. *See Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir.1985).

## I. BACKGROUND

This court has recently had occasion to describe the operation of the AFDC program generally and in Maine specifically as follows:

AFDC is a cooperative federal-state program administered by states. It was established to "encourag[e] the care of dependent children ... to help maintain and strengthen family life ... and to help such parents or relatives to attain or retain capability for the maximum self support and personal independence...." 42 U.S.C. § 601. These goals are accomplished "by enabling each state to furnish financial assistance and rehabilitation and other services." *Id.*

States determine the amount of a family's AFDC benefits by subtracting the family's countable income from a state established "standard of need," the amount of money a state determines is necessary for the subsistence of a family of a given size. Most states provide funds equal to the difference between the established standard of need and the family's countable income so that every family has enough funds to meet the standard of need. *Quarles v. St. Clair*, 711 F.2d 691, 694 (5th Cir.1983). [The Maine Department of Human Services], however, has established a maximum payment standard that limits the amount of AFDC funds available for any particular family, thus leaving some families with a gap between the AFDC funds available and the amount of money nec-

essary to elevate the family to the standard of need.

*Doucette v. Ives*, 744 F.Supp. 23, 24 (D.Me. 1990) (Carter, C.J.), *aff'd in part and rev'd in part*, 947 F.2d 21 (1st Cir.1991).

[P]rior to 1975 child support payments to which recipient families were entitled were available to help fill the gap between the funds available to a family and the standard of need. Since 1975, however, federal law mandates that families who receive AFDC funds assign the right to receive such child support payments to the state; the state may retain payments in excess of the child support obligations due in the current month. [*Doucette*, 744 F.Supp. at 24.] Because of the possibility that state retention of child support payments would cause some families living in so called "gap" states like Maine to loose income necessary for them to meet the standard of need, "Congress provided that any money retained by the state shall be added to the families' AFDC payments, provided that the monies would not raise a family's income beyond the standard of need. 42 U.S.C. § 602(a)(28)." [7] 744 F.Supp. at 25.

*Stowell v. Ives*, 788 F.Supp. 40, 41 (D.Me.) (Carter, C.J.), *aff'd*, 976 F.2d 65 (1st Cir. 1992).

In addressing the state's recent budget crisis, the Maine legislature authorized the Maine Department of Human Services to reduce the AFDC standard of need by an amount not to exceed 3.5%. *See* P.L.1991, Ch. 622, § M–18 (effective Dec. 23, 1991) (to be codified at 22 M.R.S.A. § 3760–E(1) ). As noted earlier, a full 3.5% reduction was implemented on April 1, 1992. Me. Dep't of Human Servs., *D.H.S. Public Assistance Payment Manual* Ch. II, § D, 3–4; *see supra* n. 5. This decrease has led to a compression of the "gap" between the standard of need and the maximum payment standard ("basic AFDC") resulting in a smaller total payment package to mem-

---

**7.** These payments, mandated by 42 U.S.C. § 602(a)(28), are commonly referred to as "gap" payments.

bers of the plaintiff class. *See* Stipulations of Fact ¶ 11.

The named plaintiff, Christine Stowell, is a single parent with two minor children. *Id.* ¶ 9. In 1988 she had no income except basic AFDC, section 602(a)(28) "gap" payments and section 657(b)(1) "pass through" payments.[8] *Id.* ¶ 11. Stowell continues to remain eligible to receive basic AFDC, "gap" and "pass through" payments. *Id.* ¶ 12. In May 1988, with her current assistance unit composition, Stowell would have received $416 in basic AFDC, $157 in "gap" payments and a $50 "pass through" payment for a total assistance package of $623. *Id.* ¶ 11. Under Maine's current AFDC plan, she receives $453 in basic AFDC, $100 in "gap" payments and a $50 "pass through" payment for a total assistance package of $603, or $20 less than she would have received in 1988. *Id.*

## II. LEGAL ANALYSIS

### A.

42 U.S.C. § 1396a(c)(1) provides, in relevant part, that

the Secretary shall not approve any State plan for medical assistance if—

(1) the State has in effect, under its [AFDC] plan ... payment levels that are less than the payment levels in effect under such plan on May 1, 1988....

In arguing that the Secretary has neglected a duty to enforce 42 U.S.C. § 1396a(c)(1), the plaintiff class relies on section 1396c which reads, in significant part, as follows:

If the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter, finds—

(1) that the plan has been so changed that it no longer complies

with the provisions of section 1396a of this title; ...

the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

42 U.S.C. § 1396c.

The Secretary's principal defense, on the merits, is that in the absence of a clear congressional intent his interpretation of the term "payment levels" as referring to the maximum amount of assistance available to a family with no other countable income, *i.e.*, basic AFDC, is reasonable, should be accorded deference and yields the conclusion that Maine has not reduced its AFDC payment levels below those obtaining on May 1, 1988 since its basic AFDC has actually increased since then. *See* Memorandum in Support of Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, and Opposition to Plaintiff's [sic] Motion for Preliminary Injunction ("Defendant's Memorandum") at 4–20 (Docket Item 19); Defendant's Reply Memorandum in Support of Motion for Judgment Based Upon a Stipulated Record ("Defendant's Reply Memorandum") at 2–10 (Docket Item 31). The Secretary further asserts that, even if the court disagrees with his interpretation argument, he is nevertheless entitled to prevail in this action because: (i) section 1396a(c)(1) applies only to newly submitted state Medicaid plans, not to existing plans or amendments to existing plans; (ii) section 1396c is concerned only with the content and administration of a state Medicaid plan and is therefore inapplicable to the failure of a state to maintain AFDC pay-

---

**8.** 42 U.S.C. § 657(b)(1) requires the state to pay, or "pass through," to the AFDC family the first $50 of the amount of child support payments collected by the state each month pursuant to

an approved plan without affecting the family's eligibility for assistance or decreasing any amount that is otherwise payable to such family in that month.

ments at the levels specified in section 1396a(c)(1); and (iii) the initiation of compliance hearings under section 1396c is committed to his unreviewable discretion. Defendant's Memorandum at 21–31.

Assuming, without deciding, that the Secretary's alternative defenses are without merit and therefore present no impediment to a disposition of this action based on a consideration of the "payment levels" interpretation issue only, I conclude that the Secretary is nonetheless entitled to judgment.[9]

### B.

The plaintiff class apparently presents a question of first impression. The parties do not cite, nor can I find, a published opinion construing section 1396a(c)(1)'s "payment levels" provision. In assessing the Secretary's interpretation of it, this court follows the standard of review articulated in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694, *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 82 L.Ed.2d 921 (1984). *See, e.g., Dion v. Commissioner, Me. Dep't of Human Servs.*, 933 F.2d 13, 14 (1st Cir.1991). The court must first inquire "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842, 104 S.Ct. at 2781. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. In determining congressional intent, "traditional tools of statutory construction, including consideration of the language, history, and purpose of the statute," should be used. *Dion*, 933 F.2d at 15 (citation omitted). If, however, the statute is silent or ambiguous concerning the issue at hand, the court must defer to the Secretary's permissible construction of the statute. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2781.

Nowhere in the Act is a definition offered of the term "payment levels." Although the term itself may be said to have a plain meaning, it does not indicate which among many payment levels is intended to be addressed in section 1396a(c)(1). An examination of relevant legislative history is similarly unhelpful since it appears to be encapsulated in a single passage in a House conference report, stating:

> States that elected to offer Medicaid coverage to pregnant women and infants ... would not be permitted to reduce their cash assistance payment levels to families with dependent children below the levels in effect as of July 1, 1987.

H.R.Rep. No. 661, 100th Cong., 2d Sess. 145, 256 (1988), *reprinted in* 1988 U.S.C.C.A.N. 803, 923, 1034. As is apparent, this statement begs the question. The court is therefore left with the task of examining the Secretary's construction of the statute.

### C.

Congress has purposely allowed the states great flexibility in administering the AFDC program. *Rosado v. Wyman*, 397 U.S. 397, 408, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1970). Likewise, the Supreme Court has made clear that the Secretary's administration of the program throughout the states is entitled to substantial deference. *See Blum v. Bacon*, 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982). The legislative history pertaining to the Family Support Act of 1988, P.L. No. 100–485, 102 Stat. 2343, indicates that Congress intended to preserve this discretion. The Senate Report states: "The Committee bill does not change the present law flexi-

---

**9.** I note that in *Stowell v. Ives,* a related action involving the same plaintiff class and ultimate issue, but a different defendant, the Secretary argued in an *amicus* brief that section 1396a(c)(1), enacted as part of the Medicare Catastrophic Coverage Act of 1988, Pub.L. No. 100–360, 102 Stat. 683, applies only to Medicaid plans adopted after its effective date, and not to existing plan changes or amendments, even though in 1988 all 50 states had Medicaid plans in place. The court characterized the Secretary's position in this regard as "facially to be an unappealing manifestation of the byzantine bureaucratic logic often encountered by public assistance recipients in dealing with administrative agencies." 788 F.Supp. at 43 n. 3.

bility which allows each state to *establish its own need and payment standards for assistance."* S.Rep. No. 377, 100th Cong., 2nd Sess. 49 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2776, 2826. This court, then, as noted earlier, must uphold the Secretary's construction of section 1396a(c)(1) if it is based on a permissible interpretation of the statute. *Dion,* 933 F.2d at 14–15 (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2781).

■ The issue in this case reduces itself to whether AFDC child support "gap" payments made pursuant to section 602(a)(28) are AFDC payments intended to be included within the term "payment levels" as used in section 1396a(c)(1). The plaintiff class contends that the term "payment levels" includes both basic AFDC payments and "gap" payments, and that this total assistance payment amount may not be reduced if the state is to remain in compliance with section 1396a(c)(1). Using this interpretation, the reduction in "gap" payments has resulted in a reduction in "payment levels." The Secretary's interpretation is that "payment levels" refers only to the basic AFDC grant, which has increased since 1988.

This court recently considered whether "gap" payments are AFDC payments when it decided whether Maine's action in lowering the eligibility threshold for Medicaid, the so-called medically needy income level ("MNIL"), was presumptively reasonable under 42 C.F.R. § 435.812(b)(1).[10] *See Winslow v. Commissioner, Me. Dep't of Human Servs.,* 795 F.Supp. 47 (D.Me.1992) (Brody, J.). The court rejected the plaintiffs' argument that "gap" payments should be included in the MNIL determination and that the state should be required to calculate MNILs on the assumption that one hundred percent of AFDC recipients

receive the maximum "gap" payment each month. The court found a "fundamental flaw" in that interpretation because it would require Maine to treat those whom Congress had deemed "less needy" more favorably than those it deemed "most needy." *Id.* at 49.[11] It concluded that such an interpretation would lead "to an absurd result plainly at odds with Congress' intent." *Id.* at 50.

Even if yielding anything but a foolish result here, the plaintiff class's proffered definition of "payment levels" is nevertheless problematic. Section 1396a(c)(1) establishes the "payment levels" of a state AFDC plan in effect on May 1, 1988 as the standard against which any plan changes will be measured for Medicaid approval purposes. In order to determine whether the state plan is in compliance, the "payment levels" must be susceptible of consistent and reliable measurement if a valid comparison is to be made. Each state has the flexibility to set its own standard of need and to determine to what extent it will meet this standard through basic AFDC payments. 45 C.F.R. § 233.20(a)(2)(ii), (3)(viii). The Secretary's definition of "payment levels" as basic AFDC payments provides a consistent basis for comparison. It is the maximum amount of money that is available to a family that has no other source of countable income. It is also the amount which is reduced dollar for dollar by any amount of countable income from other sources which, when added to basic AFDC, exceeds the standard of need.

In contrast, the plaintiff class's definition of "payment levels" as the total assistance payment, including any "gap" payment from child support, fails to provide a reliable standard. The amount of "gap" money available to an assistance unit is entirely dependent upon funds collected from an absent parent. In some months there may

10. 42 C.F.R. § 435.812(b)(1) provides that [MNILs] are presumed to be reasonable if they "at least equal the highest income or payment standard used to determine eligibility in the cash assistance programs...."

11. Calculating MNILs for the medically needy by adding the maximum possible child support

"gap payment" to the basic AFDC payment would mean that all of the "less needy" families would be permitted to keep and spend almost twenty percent more on non-medical living expenses than families of comparable size whom Congress believed were "most needy" and deserving of federal aid. *Id.*

be no "gap" payment at all. Thus, the total assistance payment may vary month to month for the same assistance unit, and will vary among similarly constituted units in any given month even when the same amount of child support is owed. Even the "payment levels" of May 1, 1988 would be specious because they too would have been affected by the amount of child support collected as of that date and would fluctuate broadly among families due the same amount in child support for that month.

The federal regulations reflect as a purpose of the AFDC program uniformity in administration and equitable treatment of individuals in similar circumstances. 45 C.F.R. § 233.20(a). The Secretary's interpretation of "payment levels" helps to effect this purpose. In doing so, it provides a salutary benefit deserving of respect.

Finally, the plaintiff class contends that certain commentary offered by the Department of Health and Human Services in the past in connection with the publication of proposed and final regulations regarding section 602(a)(28) "gap" payments belies the Secretary's current position. Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at 16–18. I have carefully reviewed the cited materials and conclude that they are unavailing inasmuch as their context reveals that they are directed to issues of program administration and do not purport to define or characterize "gap" payments in relation to "payment levels." Thus, while "gap" payments may be considered part of the AFDC program for administrative purposes, nothing in the statutory or regulatory scheme compels that they be treated as encompassed in the term "payment levels" for purposes of section 1396a(c)(1).

In sum, I find the Secretary's interpretation of "payment levels" as referring to the basic AFDC payment available to an assistance unit with no other countable income a permissible construction entitled to deference by the court.

## III. CONCLUSION

For the foregoing reasons, I recommend that judgment be entered for the Secretary.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

Dated at Portland, Maine this 17th day of December, 1992.