03-40395-ag, 05-1058-ag
Burger v. Gonzales

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2006

(Argued: June 11, 2007          Decided: August 17, 2007)

Docket Nos. 03-40395-ag(L), 05-1058-ag(CON)

-----------------------------------------------------------X

SANJA BURGER and MILICA SAVIC, minor child A74-850-657,

Petitioners,

- v. -

ALBERTO R. GONZALES,[*] ATTORNEY GENERAL,

Respondent.

-----------------------------------------------------------X

Before:   McLAUGHLIN, CALABRESI, SOTOMAYOR, Circuit Judges.

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

Petition for review of an order of the Board of Immigration Appeals revoking an Immigration Judge's ("IJ") grant of asylum to Sanja Burger and Milica Savic.

Petition for review GRANTED.

MICHAEL P. DIRAIMONDO, DiRaimondo & Masi LLP, Melville, N.Y. (Marialaina L. Masi, Mary Elizabeth Delli-Pizzi, Stacy A. Huber, on the brief), for Petitioners.

SCOTT REMPELL, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C. (Anne M. Hayes; Jennifer May-Parker, on the brief), for Respondent.

----------------------------------------------------------X

McLAUGHLIN, Circuit Judge:

This Court recently held that if the Board of Immigration Appeals ("BIA") intends to take administrative notice of potentially dispositive facts, it must warn a petitioner and provide the petitioner with an opportunity to respond before it denies a motion to reopen on the basis of those facts. See Chhetry v. U.S. Dep't of Justice, 490 F.3d 196, 201 (2d Cir. 2007)(per curiam). The Court declined to resolve the related question whether due process requires this same result before the BIA enters a final order of removal on the basis of administratively noticed facts. We now address this question and hold that it does.

**BACKGROUND**

In June 1996, petitioners Sanja Burger and her daughter,

2

Milica Savic, entered the U.S. as non-immigrant visitors and remained without authorization. At her removal hearing four years later, Burger, a native of the former Yugoslavia and a citizen of Serbia-Montenegro, conceded removability but sought asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Burger testified to the following facts.

From 1989 to 1991, Burger was a widely-recognized stage and screen actress in the former Yugoslavia. Because of her celebrity, Burger was regularly contacted by people whom then-President Slobodan Milosevic had placed in prominent positions in theater and television. These people pressured her to show support publicly for Milosevic by attending various political events. Burger refused to do so.

In June 1991, Burger was contacted by a man named Arkan, who was introduced to her as a businessman. Burger revealed her strong anti-Milosevic political views to Arkan. To her chagrin, she later learned that Arkan was a major organized crime figure and was working for Milosevic while maintaining a paramilitary group that had committed genocidal acts in Croatia, Bosnia, and Kosovo. Burger testified that Arkan had recently been murdered in the middle of the day in a Belgrade hotel lobby.

In October 1991, Burger fled Yugoslavia for Munich, where she remained for five years before coming to the U.S. Burger insisted that if she returned to Yugoslavia, she would be targeted as both a spy and a traitor, and because of her status as a famous actress

3

would be singled out and forced to support Milosevic.

In an oral decision, an Immigration Judge ("IJ") granted Burger's application for asylum, expressly finding that she had demonstrated a well-founded fear of persecution were she to return to Serbia-Montenegro. The IJ saw no need to address Burger's requests for withholding of removal and CAT relief.

In July 2003, the BIA reversed the IJ's grant of asylum and ordered Burger removed. The BIA took administrative notice of changed country conditions, to wit, that following the IJ's decision, Milosevic was removed from power and faced trial for crimes against humanity in the International Criminal Tribunal for the former Yugoslavia in the Hague. The BIA concluded that because the Milosevic government no longer existed and Burger's claims rested on her anti-Milosevic views, Burger no longer had a well-founded fear of persecution. The BIA did not give Burger notice of its intent to take administrative notice and it provided no opportunity to rebut the BIA's conclusion before issuing its decision. The BIA did not address Burger's withholding of removal and CAT claims.

Three months later, Burger moved to reopen. She furnished an affidavit from an expert in 20th century Western Balkan affairs and professor of history. The affidavit stated that Serbia-Montenegro was currently a "semi-mafioso" state with power shared among the old Milosevic structure, the new government structure, and organized crime.

4

The BIA denied Burger's motion to reopen. It found that while "political and economic problems do exist in Serbia and Montenegro," Burger had failed to establish that she had a well-founded fear of persecution if she went back to Serbia-Montenegro.

Burger now petitions this Court for review of the BIA's decision.

For the reasons that follow, we grant the petition for review, vacate the BIA's decision to revoke Burger's asylum grant, and remand to the BIA.

**DISCUSSION**

Burger argues: (1) that the BIA's taking of administrative notice constituted improper fact-finding; and (2) that the BIA denied her due process by failing to warn her of its intention to take administrative notice. While the first argument is meritless, the second requires remand.

A. Fact-finding

We consider questions of law de novo. Secaida-Rosales v. INS, 331 F.3d 297, 307 (2d Cir. 2003).

The BIA generally may not engage in fact-finding in the course of deciding appeals. See 8 C.F.R. § 1003.1(d)(3)(iv). However, "[i]t is well-settled that the BIA has the authority to take administrative notice of current events bearing on an [asylum] applicant's well-founded fear of persecution." Yang v. McElroy, 277 F.3d 158, 163 n.4 (2d Cir. 2002). As with judicial notice, the common law counterpart of administrative notice, properly noticed

5

current events must be "commonly known." See 8 C.F.R. § 1003.1(d)(3)(iv); cf. Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known . . . or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

Here, the ouster and subsequent trial of Milosevic were commonly known facts whose accuracy Burger herself has not disputed. These facts fall squarely within the definition of "current events bearing on an [asylum] applicant's well-founded fear of persecution." Yang, 277 F.3d at 163 n.4. Thus, the BIA did not engage in improper fact-finding.

B.    Due Process

Aliens, of course, are entitled to due process. Zadvydas v. Davis, 533 U.S. 678, 693 (2001). They must be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner,'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

To establish a violation of due process, an alien must show "that she was denied a full and fair opportunity to present her claims" or "that the IJ or BIA otherwise deprived her of fundamental fairness." Xiao Ji Chen v. U.S. Dep't of Justice, 434 F.3d 144, 155 (2d Cir. 2006), reh'g granted, vacated on other grounds by Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315 (2d Cir. 2006). Critically, an asylum applicant "must be given notice

6

of, and an effective chance to respond to, potentially dispositive, administratively noticed facts." Chhetry, 490 F.3d at 200.

The Government does not dispute that the noticed facts were dispositive of Burger's claim, and it concedes that the BIA failed to warn Burger that it would take notice. Rather, the Government contends that Burger's motion to reopen gave her a full and fair opportunity to present her claim and thus cured the lack of advance notice. The circuits are divided.

The Fifth, Seventh, and D.C. Circuits have held that a motion to reopen suffices to satisfy due process in this context. See Gutierrez-Rogue v. INS, 954 F.2d 769, 773 (D.C. Cir. 1992) ("The availability of the petition to reopen secures [petitioner's] due process right to a meaningful hearing."); Rivera-Cruz v. INS, 948 F.2d 962, 968 (5th Cir. 1991) (same); Kaczmarczyk v. INS, 933 F.2d 588, 597 (7th Cir. 1991) (same).

The Ninth and Tenth Circuits, however, have held that due process requires that the BIA provide applicants with notice and an opportunity to be heard before the BIA determines on the basis of administratively noticed facts that a petitioner lacks a well-founded fear of persecution. See Getachew v. INS, 25 F.3d 841, 846 (9th Cir. 1994) (advance notice and opportunity to respond required when BIA determines, on the basis of administrative notice, whether an "election has vitiated any previously well-founded fear of persecution"); de la Llana-Castellon v. INS, 16 F.3d 1093, 1100 (10th Cir. 1994) (availability of motion to reopen did not satisfy

7

due process where BIA reversed IJ's finding that petitioners had a well-founded fear of persecution based solely on administratively noticed facts).

As the Ninth and Tenth Circuits have noted, the reopening procedure has serious limitations as a guaranty of due process. See, e.g., de la Llana-Castellon, 16 F.3d at 1100; Castillo-Villagra v. INS, 972 F.2d 1017, 1029-30 (9th Cir. 1992). The BIA's decision to grant a motion to reopen is purely discretionary. 8 C.F.R. § 1003.2(a). Moreover, because the filing of a motion to reopen does not automatically stay the execution of an order of removal, id. § 1003.2(f), the applicant's due process rights depend entirely on the BIA's good faith. Cf. Kaczmarczyk, 933 F.2d at 597 n.9 ("We presume that when an asylum applicant uses a good faith motion to reopen to dispute officially noticed facts, the Board will exercise its discretion to stay the execution of its decision until it has had an opportunity to rule on the applicant's motion.").

These deficiencies become more acute in cases where administratively noticed facts are the sole basis for the BIA's reversal of an IJ's grant of asylum. See de la Llana-Castellon, 16 F.3d at 1099 ("Because the administratively noticed facts constituted the sole evidence upon which the BIA relied to establish changed circumstances, advance notice and an opportunity to be heard on the significance of the political changes in Nicaragua was all the more crucial.").

8

Here, administratively noticed facts constituted the sole basis of the BIA's determination that Burger no longer harbored a well-founded fear of persecution. The BIA's conclusion rested foursquare on an assessment of conditions in the post-Milosevic world. Under these circumstances, it cannot be said that Burger's motion to reopen protected her right to be heard "at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 333. Thus, while the dismantling of the Milosevic regime may have been a commonly known current event, the BIA erred by failing to give Burger advance notice of its intention to consider this extra-record fact. Moreover, the BIA erred in depriving Burger of the opportunity to rebut this fact's significance before issuing its decision. The removal of a persecuting despot might vitiate an asylum applicant's well-founded fear of persecution, but in many cases lingering elements of a despot's regime may still pose a threat to an applicant's life and safety. See Getachew, 25 F.3d at 846 (observing that individualized consideration of the relevance of administratively noticed facts is required to determine "whether a particular group remains in power after an election, and whether the election has vitiated any previously well-founded fear of persecution"). In this case, Burger presented to the BIA evidence that remnants of the Milosevic regime were still in power and threatened to persecute her were she returned to Serbia-Montenegro. The BIA's failure to consider this evidence was error.

Because we find that the BIA erred in these respects, we need

9

not decide whether the BIA abused its discretion in denying Burger's motion to reopen.

Finally, the BIA did not consider Burger's withholding of removal or CAT claims because the IJ never ruled on these claims in the first instance. On remand, the fate of Burger's withholding claim will depend on her asylum claim, as an applicant who fails to qualify for asylum necessarily fails to qualify for withholding of removal. See Hoxhallari v. Gonzales, 468 F.3d 179, 184 (2d Cir. 2006). However, because "asylum and CAT claims warrant[] individualized treatment," Ramsameachire v. Ashcroft, 357 F.3d 169, 186 (2d Cir. 2004) (internal quotation marks omitted), Burger's CAT claim will require separate consideration below.

## CONCLUSION

For the foregoing reasons, we GRANT the petition for review, VACATE the BIA's reversal of the IJ's decision, and REMAND the case for further proceedings consistent with this opinion, including further factfinding before the IJ if appropriate. Burger's pending motion for a stay of removal is DENIED as moot.